WILLIAM H. BUCHANAN and Others, Respondents, v. ALBERT ASH-DOWN, Appellant.

*Mistaken boundary line — neither the owner nor the purchaser of adjacent land is estopped thereby — when acquiescence for twenty years is necessary.*

Where the owners of adjacent lands survey out a line and, believing the survey to be correct, fix the line accordingly, neither party assuming to know more than the other about it, and neither asking the other to do any act on the faith of it, neither party will be estopped from claiming up to the true line, when he discovers that a mistake has been made in the survey; particularly when the other party had made no improvements upon the land between the mistaken boundary line and the true one except to clear it up and appropriate the proceeds to his own use.

Nor in such a case will either party be estopped from claiming up to the true line as against a person who has purchased the adjacent land from the other owner on the theory that the mistaken boundary line was the true one.

When, owing to an inaccuracy or unintelligible description in a deed, or the obliteration of monuments referred to therein, a line, intended to be described by the conveyance, cannot be accurately located upon the ground, a location by agreement of the adjacent owners will be controlling, and when once made, even though by parol, cannot be repudiated by either; but where such line intended to be described by the conveyance can be found and located, a party

who would substitute for that line another, fixed by parol agreement between adjacent owners, must show that the substituted line has been located and acquiesced in for at least twenty years.

APPEAL by the defendant, Albert Ashdown, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Chemung on the 22d day of April, 1889, upon a verdict in favor of the plaintiffs, rendered at the Chemung County Circuit, awarding them the possession of five and three-tenths acres of land, and for fifteen dollars damages, and from an order entered in said Chemung county clerk's office on the 18th day of July, 1890, denying the defendant's motion for a new trial, made on a case and exceptions settled by the trial court.

The action was in ejectment to recover a strip of land lying adjacent to a disputed line. The defense relied upon was that a grantor, through whom the plaintiffs claim, was estopped from asserting his title, and that the line was fixed by a practical location of it.

*Wilmot E. Knapp*, for the appellant.

*H. H. Rockwell*, for the respondents.

PARKER, J.:

There seems to be no doubt but that, according to the paper title of both parties, the land in dispute belongs to the plaintiffs. The defendant's grantors never had any title west of the division line between the northeast and the northwest quarter of the 2,000 acre tract. All of his land must be found within the northeast quarter of that tract, and the plaintiffs' land lies adjacent to and west of such division line. Also, it appears that there was no serious difficulty in locating such division line upon the ground, by surveying the whole tract, and starting from well-known monuments on the exterior lines of such tract. The land in dispute lies west of such division line properly located, and, hence, is not embraced within the northeast quarter of the tract.

But the defendant claims that owing to the conduct of one of the grantors through whom the plaintiffs claim, to wit, Fitzsimmons, his, defendant's, rights have been extended over onto the northwest quarter, and up to the fence on the west side of the strip of land in

dispute, and of which he has for some years been in possession. He claims this extension of his title on two grounds:

*First.* That Fitzsimmons' conduct estopped him and his grantors from claiming farther east than the line of such fence.

*Second.* That such line was fixed by himself and Fitzsimmons by a practical location as the true line between them.

In 1871 the defendant held a contract from one Webb for the purchase of fifty-nine and one-half acres in the northeast quarter of such tract, and Fitzsimmons owned the land next adjacent on the west, and in the northwest quarter of the tract. There were then two lines running north and south blazed through the forest, the one some rods west of the other, and doubt existed as to which was the correct division line between the two quarters. The deed to Webb referred to his land as the northeast quarter. The deed to Fitzsimmons did not refer to either quarter in its description, and did not give any monuments purporting to locate such division line between the two quarters. Webb claimed that the most westerly of the blazed lines was the division line. Fitzsimmons claimed that the easterly of such blazed lines was the division line between them.

The defendant claims that in 1871, Fitzsimmons, with a surveyor, came to him for the purpose of locating such line; that they went onto the lot, surveyed it out, and agreed that the west line blazed through the woods was the correct line between them; that the defendant, acting thereon, the next year paid up his contract to Webb and took his deed from him, describing the land therein up to the west line as so located; that he subsequently, from year to year, cleared up to that line and built fences thereon, and for upwards of twelve years he had had a fence along the whole of such line, and had cultivated and used up to that fence. Hence, he claims that he cannot now be disturbed in the possession of such land by any grantee of Fitzsimmons.

Generally in order to deprive the owner of land of his title thereto by an estoppel *in pais*, the acts or representations on which the estoppel is based must indicate intentional deceit, or at least such gross negligence as to evidence an intent to deceive. (Pom. Eq. Juris. §§ 806, 807; *Trenton Banking Company* v. *Duncan*, 86 N. Y. 230.)

It is said that the truth concerning the material facts represented or concealed, must have been known to the party sought to be estopped, at the time he made them, or else the circumstances must be such that a knowledge of the truth is necessarily imputed to him. (Pom. Eq. Juris. § 809.)

It sometimes occurs, however, that when there is actual intervention on the part of one having the title to land, which induces another to deal, concerning it, with a third person, as if he were the owner, the person having the title will be estopped from asserting it against the person so mislead, even though he did not at the time know that the title was his. Such estoppel is based on the theory that when one of two innocent parties must suffer a loss, it must be borne by that one of them who by his conduct made the injury possible. An illustration is found in the case of *Storrs* v. *Barker* (6 Johns. Ch. 166.)

In the case before us the most that can be charged against Fitzsimmons falls far short of indicating an intent to deceive, or of any negligence suggesting such an intent. From all the evidence there is on that subject, it is plain that Fitzsimmons neither knew, nor claimed to know, any more about the correct line than Webb or the defendant, who represented Webb, knew. He had no better means of ascertaining than they had. Both Fitzsimmons and the defendant went upon the lot together, knew the facts which the surveyor assumed as correct, and the method which he adopted to find the true line, and as the result of such survey both agreed that the west line was the correct one. The facts which convinced the one convinced the other. From all that we know of the transaction, it seems to have been a conclusion reached and agreed upon by both, but based upon a mistaken and inaccurate survey. At least such is the only fair inference to be drawn from the evidence. Therefore, Fitzsimmons should not be held estopped on the ground that, knowing of his own claim to the land up to the east line, he either negligently or deceitfully allowed the defendant to believe that the west line was the correct one, and to purchase from Webb on that theory.

Nor do the facts warrant an estoppel against him on any ground. If he had assured the defendant that Webb owned up to the west line, and advised him to take a deed bounded by that line, it would

be a case somewhat analogous to that of *Storrs* v. *Barker*, above cited, and it might be said that his conduct had caused the injury which the defendant must suffer. But there is nothing in the case to show that Fitzsimmons knew under what claim the defendant held the land, whether as vendee or grantee of Webb, or that any consequences would follow their act of fixing upon the line between them other than would ordinarily follow when two owners agree upon such a line. He did not suggest to the defendant to purchase from Webb, nor did he in fact give him any assurance that Webb owned up to such line, beyond the survey that was then made and his acquiescing in it as a correct one.

It seems to be simply a case where the owners of adjacent lands survey out the line, and believing the survey to be correct, fix the line accordingly, neither party assuming to know more than the other about it, and neither asking or advising the other to make any purchase, or do any act on the faith of it. Surely by such conduct neither party would be estopped from claiming up to the true line, if in a month or a year thereafter, he should discover that a mistake had been made in the survey, and particularly when the defendant had made no improvements upon the premises, except to clear it up, and appropriate the proceeds to his own use.

The mere acquiescence of Fitzsimmons in a survey made by both parties, and supposed by both, to be correct, was by no means such an intervention or conduct on his part, " as to render it just that as between himself and the defendant, he should bear the loss." Unless the facts show such an equity no estoppel can be created. (See *Trenton Banking Company* v. *Duncan*, 86 N. Y. 222, 230; *Hinkley* v. *Crouse*, 125 id. 730.)

The claim that the west line was fixed by " practical location," requires the examination of another rule. When, owing to an inaccurate or unintelligible description in a deed, or the obliteration of monuments referred to, the line intended by the conveyance cannot be accurately located upon the ground, a location by agreement of the adjacent owners will be controlling, and when once made, even though by parol, cannot be repudiated by either. But when the line intended by the conveyance can be found and located, a party who would substitute for that line another one fixed by parol agreement between the adjacent owners, must show that the substituted

line has been located and acquiesced in for at least twenty years. There need not be the actual possession of the land by the party claiming up to such line, that is necessary to sustain an adverse possession, but there must have been a location and acquiescence for that full period.

A careful examination of the decisions upon this subject will show that they are all in harmony with the rule as thus stated. In *Clark* v. *Wethey* (19 Wend. 320), it is held that declarations and acts of the parties going to establish a different location from that fixed by the deed are not admissible, but where, from vagueness and obscurity of the description, or from the decay or destruction of the monuments referred to in the deed, doubt and uncertainty exist in reference to the time, the declarations and acts of the parties may be shown.

In *Baldwin* v. *Brown* (16 N. Y. 359), it is said that it is not the parol agreement which establishes the line, but the long acquiescence in it, which "affords ground, not merely for an inference of fact to go to the jury as evidence of an original parol agreement, but for a direct, legal inference as to the true boundary line," also that "The rule seems to have been adopted as a rule of repose, with a view to the quieting of titles; and rests upon the same reason as our statute prohibiting the disturbance of an adverse possession which has continued for twenty years."

These cases have been continually cited and approved (see *Reed* v. *Farr*, 35 N. Y. 113; *Reed* v. *McCourt*, 41 id. 436; *Corning* v. *Troy Iron & Nail Factory*, 44 id. 595; *Ratcliffe* v. *Gray*, 3 Keyes, 510; *Clark* v. *Baird*, 5 Seld. 204; *Raynor* v. *Timerson*, 51 Barb. 519), and as recently as *Eldridge* v. *Kenning* (12 N. Y. Supp. 693), it is said that no title is gained by practical location in any less period than under the Statute of Limitations. To same effect is *Clark* v. *Davis* (19 N. Y. Supp. 191).

The cases of *Vosburgh* v. *Teator* (32 N. Y. 561); *Williams* v. *Montgomery* (16 Hun, 50), and *Sherman* v. *Kane* (86 N. Y. 73), so far as they would sustain a line acquiesced in for a less period than twenty years, I understand to refer to those instances where the line intended by the deed cannot be located with reasonable certainty.

In the case before us, the deed to Webb, the defendant's immediate grantor, described the land conveyed to him as the northeast

quarter of the 2,000 acre tract, and there is no difficulty in locating that quarter, or in finding its true west line. In fact, it was plainly marked on the ground by a blazed line, but it was the easterly of the blazed lines instead of the westerly one. The parties in their survey mistakenly adopted the westerly one, but inasmuch as such mistaken location had not been acquiesced in for twenty years, the defendant's claim under it had not ripened into a title, and Fitzsimmons and his grantors had not been thereby divested of the title which their deeds gave them.

If these views are correct, the defendant established no defense to the plaintiff's claim, even though the facts be taken as he claims them to be. His motion for a nonsuit was properly denied, and the judgment against him was such as should have been rendered. We conclude, therefore, that the judgment should be affirmed, with costs.

HARDIN, P. J., concurred; MERWIN, J., concurred in the result.

Judgment and order denying a new trial affirmed, with costs.