W. T. MORROW et al, Appellees, v. MARY E. HALL, Appellant.

**BOUNDARIES:** Acquiescence—Adverse Possession—Pleading. One who pleads that a certain line is the true boundary line between tracts of land because recognized and acquiesced in for the statutory period of ten years must stand or fall on that theory. After failing to establish acquiescence, he will not be permitted to prevail on the claim of adverse possession only.

**COSTS:** Apportionment—Equitableness—Presumption. An apportionment of costs will be presumed just and equitable unless the record on appeal shows the contrary.

**APPEAL AND ERROR:** Trial to Court—Belated Ruling on Evidence. 3 Even though the court, in a trial to itself, did commit error in receiving evidence, the error was cured by subsequent ruling excluding such evidence.

**APPEAL AND ERROR:** Judgments in Other Cases—Necessity for 4 Inclusion in Appeal Record. Manifestly this court on appeal cannot give consideration to some other judgment in some other case unless the same is embodied in the appeal record.

*Appeal from Davis District Court.*—HON. FRANCIS M. HUNTER, Judge.

WEDNESDAY, MARCH 17, 1915.

ACTION at law to determine a controversy over a division fence. Trial to the court without a jury. Judgment and decree for plaintiffs. Defendant appeals. *Affirmed.*

*Payne & Goodson,* for appellant.

*T. P. Bence* and *C. W. Ramseyer,* for appellees.

PRESTON, J.—1. Plaintiffs own the W½ NE¼ SE¼, with other lands. One Feagins owns the twenty acres east of it. Defendant owns the SE¼ SE¼.

Plaintiffs allege that defendant is the owner of, and by mutual agreement bound to keep up, the east half of the fence between said tracts, and the plaintiffs the west half; the plaintiffs and defendant have owned said tracts of land more than ten years last past; and that the line of fence between said tracts has been marked by the line of an old rail fence for forty or fifty years, and is the true line between said tracts; and said fence was repaired and kept up by the respective owners ever since said rail fence was built, until about the fall of 1902, the defendant erected a wire fence about eight or ten feet north of the line of said old rail fence, and insists on said wire fence being the true line; that the line of the old rail fence between said tracts of land has been recognized and acquiesced in by the respective owners for more than

ten years, and is the true line between said tracts of land; that said defendant refuses to remove her said wire fence, and refuses longer to recognize the line of the old rail fence as the true boundary. They ask that the line as alleged by them be decreed to be the true line.

Defendant says that the said tracts of land have been separated by a post and wire fence on the same line as that of the present fence of the defendant, which line extended on west from defendant's fence, and the fence of the defendant, and the line extending west from the same is the true line between said tracts, and the same has been recognized and acquiesced in as the true boundary line between the said farms by both plaintiffs and defendant, and plaintiffs' grantor, for more than ten years last past, and the same is the true and lawful boundary line between said tracts; and defendant says that plaintiffs have recently set their fence, which is the west half, some six or eight feet south of the line where it was formerly located, which former location was on a line with defendant's fence; and defendant says that her fence is on the true line and the plaintiffs' fence is not; neither has plaintiffs' fence been recognized as the boundary for ten years.

Both parties claim their wire fences are on the line of the old rail fence. The question is, which party had their wire fence on the line of the old rail fence built by one Small, father of the defendant, and Feagins, the father of one of plaintiffs, and to determine the true line in which both acquiesced.

It is a question of fact. There were quite a large number of witnesses and the evidence was conflicting. The cause is not triable *de novo*. The weight to be given to the findings of the trial court, under such circumstances, is well understood and has been settled by many decisions, as well as by the statute. We are ourselves satisfied, from a reading of the record, that the conclusions of the trial court are correct, and sustained by the evidence.

The findings were specific and we shall set out only so

much thereof as seem to be important and controlling. In making his findings, the trial court used a plat which had been introduced in evidence. The court found that:

"Harrison Feagins was the owner of the entire Northeast Quarter of the Southeast Quarter for many years up to October 2nd, 1899, when he sold the West One Half to the plaintiff, W. T. Morrow, and executed to him a deed therefor, and about six years ago W. T. Morrow deeded said land to his wife, Lida A. Morrow, plaintiff.

"Mr. Small, father of the defendant, owned the land now owned by the defendant, for many years and to the time of his death, and the defendant purchased it in 1896 from the referees appointed to distribute his property.

"That after the defendant became the owner of her land, and before the plaintiffs became the owners of their lands, the defendant and said Feagins entered into a mutual agreement relative to the fences between said lands and thereunder, Feagins was to keep up the west twenty rods and she, the defendant, the east twenty rods thereof, and such arrangement prevails to this time between the parties plaintiff and defendant."

Forty-four years ago, Feagins, who then owned the northeast quarter of said quarter section, and Mr. Small, who then owned the southeast quarter of said quarter section, had a survey made of the boundary line between them from point "O" to point "E" on the plat ("O" is at the northwest corner and "E" the northeast corner of the southeast southeast) and during the same year built a rail fence approximately along the surveyed line, intending to place it on the exact boundary line between said points. By mutual agreement, Feagins constructed and owned the west forty rods, or west half, of said fence, and constructed a rail fence so that the south corners of the worm of the fence rested upon the surveyed line; and Small erected and owned the east forty rods, and constructed his rail fence so that the north corners

of the worm rested upon the surveyed line. The worm of the rail fences was four and a half feet in width. Both of said parties recognized the boundary line to be along the south corners of the west forty rods and along the north corners of the east forty rods of the two worms of said fences, and acquiesced therein from the time said line was run and fences built to the death of said Small, and to the sale of above land to the plaintiffs; and at the time the plaintiffs purchased their land, and many years prior thereto, they had knowledge of said rail fence and of the fact that it had been recognized and acquiesced in as the true boundary line in the manner above set forth, and for many years prior to the time defendant purchased her said land; and at the time, she had knowledge of said rail fence, and the fact that it had been recognized and acquiesced in by her father and Feagins as the true boundary line between said tracts of land, in the manner above set forth.

That the defendant built a new wire fence along the east twenty rods between her land and the land of the plaintiffs, which was constructed in 1899, and claims that it was constructed on the line of the north corners of the worm of the old rail fence, and further claims that her said wire fence is on the true line between said lands.

The court did not find, but the undisputed evidence shows, that this fence was reset about 1910, and it is the claim of the defendant that it was on the line of her first wire fence.

The court further found that plaintiffs constructed a wire fence in 1910, which they claim was constructed immediately north of the center of the worm of the old rail fence, and claim that their wire fence stands about two and a half feet north of the old surveyed line and of the south corners of the worm of the old rail fence. That the old rail fence remained where originally constructed along the east twenty rods, until the defendant built her fence, when that portion of it disappeared, and remained there along the west twenty rods until the plaintiffs built their fence, when it disappeared.

That extending defendant's fence west, and on that line west to the west side of plaintiff's land, and extending the plaintiff's fence east, and on east to the east side of plaintiff's land, would leave a space between the two fences approximately ten feet in width.

"I do not find that Feagins, at the time the defendant built her said wire fence, agreed with the defendant that the line where it was placed, was the true boundary line between his said lands and the land of the defendant, or that he ever recognized or acquiesced in that line, as being the true boundary line, or during any of the entire time that the plaintiffs, after they became the owner of their said land recognized or acquiesced in that line as being the true boundary line. On the other hand, they never did recognize or acquiesce in it. The defendant has never recognized or acquiesced in the line where the plaintiffs built their wire fence, as the true boundary line between their said lands.

"The true boundary line between the lands of the parties plaintiff and the defendant, extending the full forty rods, is at the south corners of the worm of the old rail fence, excepting at the point where the small ravine crosses said land at about "F" to "J," and at that point it is straight from the main body of the south corners of the worm of the old rail fence east of there, to the south corners of the main body of the worm of the old rail fence, west of there.

"The plaintiffs are not claiming that the boundary line is south of the south corners of the worm of the old rail fence, and if their wire fence is south of it, then they are not entitled to maintain it where it is.

"The defendant in her evidence, says that all she wants is the land belonging to her. If her wire fence is north of the south corners of the worm of the old rail fence, then her wire fence is north of the true boundary line, and she is not entitled to the intervening strip of ground by reason of any of the claims made in her answer."

A decree was entered, and a surveyor was appointed to

locate the south corners of the worm of the old rail fence between said tracts of land. This was done and the commissioner made his report, accompanied by a plat; and the report was approved. There was no objection to the appointment of the commissioner, or to his report.

What we have said as to the conclusiveness of the findings of the trial court disposes of the principal point in the case.

It should be said. that at about the time Feagins sold the twenty acres to Morrow an arrangement was made by which the parties "swapped" fences, as defendant puts it; which gave plaintiffs the west twenty rods of fence, Feagins the east twenty rods, and defendant the forty rods together in the center.

2. The trial court found that defendant constructed her wire fence in 1899. Plaintiffs contended that it was built in 1902. Appellant states that she does not appeal from that part of the decree so finding that her fence was constructed in 1899. There was a sharp conflict in the evidence at this point. It is now contended by appellant that, by reason of her having built her fence in 1899, the claim of plaintiff is barred by the statute of limitations because of adverse possession. But that alone is not sufficient. Defendant did not plead or rely upon the statute of limitations upon any other theory than that of recognition and acquiescence. The evidence was directed to proof of that fact, and that was the theory of the trial. The trial court found that while defendant's wire fence was constructed in 1899, yet there was no agreement that such was the true line, or that it was so recognized or acquiesced in. The finding is supported by the evidence.

1. BOUNDARIES: acquiescence: adverse possession: pleading.

3. The court taxed to defendant all costs except $30.00, which was taxed to plaintiffs. The record does not disclose the reason for this. Appellees claim that all the costs should have been taxed to defendant, because plaintiffs were successful; but they have not appealed. Some additional costs were made on the question as to whether the wire fence of defendant was

2. COSTS: apportionment: equitableness: presumption.

erected in 1899 or 1902. The inference is that because of this, and the finding in favor of defendant at this point, the court apportioned the costs. Appellant does not complain that they were apportioned, but claims that the court should have made a more just and fair division. There were a few witnesses called on that point alone; others testified upon that and other matters. The fee bill is not in the record, and we do not know how many days the witnesses were in attendance, or the number of miles traveled by them. We are not as well able to determine that question as the trial court.

4. Over the objection of defendant, one of the plaintiffs was permitted to testify that he did not at any time recognize the wire fence of defendant as being on the line. There was also a motion to strike the answer, which was not at the time ruled upon; but later, and during the trial, while the same witness was on the stand, the motion to strike was sustained. This assignment of error should not have been made.

3. APPEAL AND ERROR: trial to court: belated ruling on evidence.

5. It appears that there is another action pending between Feagins and defendant as to their part of the fence. It seems to us that these controversies could have been determined in one action, under the statute providing for the establishment of disputed corners and boundaries, but that question is not raised, hence it is not determined. But it is argued by defendant, and it has been assigned as error, that another judge determined the other case in favor of this defendant, and that the issues and evidence in both cases are the same. It seems, however, that a petition for a new trial was filed in that case, and from the ruling in that matter an appeal has been taken to this court. The other case was tried first. Possibly the petition for new trial was based upon a claim of newly discovered evidence which was developed on the trial of this case. Manifestly, it would not be proper for us to refer to the record in another case,

4. APPEAL AND ERROR: judgments in other cases: necessity for inclusion in appeal record.

which is no part of this case, for the purpose of determining the questions arising on the appeal of the instant case.

We discover no error and the judgment is—*Affirmed.*

LADD, C. J., EVANS and WEAVER, JJ., concur.