LEHMAN, Appellant, v. SMITH et al, Respondents.

(168 N. W. 857).

(File No. 4211. Opinion filed July 22, 1918).

1. **Pleadings—Quieting Title—Amendment to Conform to Evidence, Embracing Estoppel as Defense—Surprise, Plaintiff's Duty to Demand Postponement—Rule—Error.**

In a suit to quiet title to realty, involving location of a quarter section corner, where, at close of trial deefndant was permitted to amend the answer so as to set up an estoppel against plaintiff as a defense, **held**, that, assuming that the amendment introduced a new issue which in effect surprised plaintiff, he should have so advised trial court and demanded postponement of trial; since refusal of a postponement upon sufficient showing would have been prejudicial error, while the ruling, in absence of such demand, was not prejudicial.

2.   **Pleadings—Amending Answer to Conform to Evidence, Embracing Estoppel—Amendment, Judicial Discretion.**

In r suit to quiet title to realty, trial court having permitted defendant to amend answer at conclusion of trial, to conform to the evidence, which amendment embraced the defense of estoppel, *held*, that the amendment itself was not legally inadmissable, but was within sound discretion of trial court.

3.   **Appeals—Error—Findings, Evidence, Rule of Reversal.**

The rule that Supreme Court will not disturb findings of trial court unless same are clearly against prepondence of evidence, is well settled.

4.   **Boundaries—Survey—Quarter Corner—Mounds and Pits, as Determinate Evidence—Field Notes, Plat, Effect as Evidence—Lost Corner, Finding Reversed.**

In a suit to quiet title to realty, involving location of a quarter section corner as originally placed by government survey, and the issue as to whether said corner was lost, *held*, that the corner, as claimed by plaintiff, was the true one, being 1.85 chains north of that claimed by defendants, which latter was established by a surveyor in a direct line and at proper distances between known section corners, and it, being undisputed, as shown by abundance of evidence, that a mound and two pits corresponding to government regulations, existed undisturbed at or near the point claimed by plaintiff, and that no other corner or indications of a government corner was ever observed or found anywhere in vicinity of the mound and pits claimed by plaintiff as the original corner; such evidence being impeached only by slight divergence in witnesses' testimony, and by field notes and plat of original survey, which purport to locate the quarter corner on a straight line between the section corners, and by existence of fences located at different distances from the corner and not in alignment, which fences were not built by plaintiff. *Held*, further, that a finding that the corner was lost, was unsupported by evidence.

5.   **Estoppel—Adverse Claims to Realty, Involving Quarter Corner—Non-Claim of Land Beyond Survey Line.**

In a suit to quiet title, involving location of a quarter section corner, neither party having ever intended to claim land outside of or beyond lines established by original government survey or true boundary line, and where the only controversy is, as to location of the quarter corner, the question of statutory title by adverse possession for 20 years is not involved; since estoppel arises only where by conduct, or acts, the adverse party has been induced to alter his position, or to do that which he would not otherwise have done, and to his prejudice. That mere failure to bring suit does not create an estoppel.

6. **Adverse Possession—Claimants to True Line, Whether Possession Adverse—Acquiescence; Duration Of, Effect.**

As a general rule possession is not adverse when the parties intend to claim only as far as the true survey lines. But the question of adverse possession may be conclusively determined by length of time during which there has been acquiescence in a disputed boundary; when the acquiescence continues during the prescriptive statutory period, title may be acquired through acquiescence alone.

7. **Quieting Title—Adverse Possession re Dividing Fence Line—Presumption of Agreement, Effect—Estoppel Distinguished.**

The rule that the presumption of an agreement fixing a dividing line is conclusive, where both parties have been in possession and use of their respective lands up to a dividing line marked by such visible objects as a fence, is correlated to the rule of adverse possession, and is distinct from rule of estoppel by acts or conduct. Such possession for a statutory period barring re-entry, is conclusively presumed to be adverse, the right being barred by the statute without further proof that possession is adverse.

8. **Quieting Title—Boundaries—Disputed Quarter Corner—Acquiescence in Use, When Not Estoppel—Evidence, Sufficiency.**

In a suit to quiet title to realty, involving disputed boundary line and a quarter section corner, trial court having made findings and conclusions upon which estoppel in defendant's favor was based; the evidence being in substance that plaintiff for a period of years acquiesced in the use of the disputed tract by one who had fenced it in, and afterwards built a fence which did not include the tract in dispute; that an east and west highway existed and was travelled south of the disputed corner and between the fences for over 20 years; certain breaking being done and trees planted by plaintiff's predecessors a little south of the line claimed by plaintiff; said road being part of the time north of the trees, then a part south and between the tree rows; plaintiff all the time insisting, as against all adverse claimants, that the original government quarter section corner was at the point contended for by him at the trial, he at no time having induced defendant to do any act or to make any expenditure which could be deemed prejudicial; **held,** that the mere fact that plaintiff, under those circumstances, suffered defendant to remain in possession and cultivate and appropriate to his use crops raised on the disputed strip, and refrained from bring ejectment, did not estop him from claiming same, such use being beneficial rather than prejudicial to defendant; that the findings failed to support the conclusion as to estoppel.

Appeal from Circuit Court, Davison County. Hon. Frank B. Smith, Judge.

Action by Jacob C. Lehman, against William M. Smith and others to quiet title to realty. From a judgment for defendant and from an order denying a new trial, plaintiff appeals. Reversed, and remanded for further proceedings.

*Lauritz Miller,* for Appellant.

*Herbert E. Hitchcock,* and *Spangler & Haney,* for Respondent.

(1) To point one of the opinion, Appellant cited:

10 R. C. L. Sec. 157; Conoyer vs. Wright, 6 N. J. Eq. 613; 47 Am. Dec. 213.

(4) To point four of the opinion, Appellant cited:

Arneson vs. Spawn, 2 S. D. 269, 49 N. W. 1066; Randall vs. Burke Township, 4 S. D. 337; White vs. Amrhien, 14 S. D. 270; Tyler et al vs. Haggert, 19 S. D. 167; Hoekman et al vs. Iowa Civil Twp. et al 28 S. D. 206.

SMITH, J. This case is before us on appeal from a judgment for respondents, and from an order overruling appellant's motion for new trial. The controversy is as to the location of the quarter section corner common to sections 28 and 33, township 103, range 61, in Davison county. The location of this corner is decisive of the boundary line of the tract of land in dispute.

[1, 2] Appellant properly assigns as error insufficiency of the evidence to sustain the findings and conclusion of the trial court: First, that the government corner in dispute was a lost corner; second, that upon the facts appellant should be estopped by acquiescence and laches from disputing the location of the corner as claimed by respondents. Appellant also assigns as error an order of the trial court permitting respondents to amend their answer by pleading an estoppel, after the conclusion of the trial. The amendment pleaded constituted a new and independent defense, but was permitted as conforming the pleading to the evidence already before the trial court. Appellant's contention is that the evidence received was not directed to the defense of estoppel, and that the amendment, being allowed after the trial, prevented him from introducing evidence to combat the defense of estoppel and that such defense could not have been anticipated. If it be assumed that the amendment introduced a new issue, which was in effect a surprise to appellant, and that he was not then prepared with necessary and available evidence to meet such issue, it was his duty so to advise the trial court and demand a postponement of the

trial for a reasonable time in which to procure and present his evidence. A refusal of a postponement upon a proper and sufficient showing would have been prejudicial error. The amendment itself was not legally inadmissible, but was within the sound discretion of the trial court. Wolfinger v. Thomas, 22 S. D. 57, 115 N. W. 100, 133 Am. St. Rep. 900; Rectenbaugh v. Port Huron Co., 22 S. D. 411, 118 N. W. 697; Hardy v. Woods, 33 S. D. 416, 146 N. W. 568, Ann. Cas. 1916C, 398; Noziska v. Aten, 35 S. D. 451, 152 N. W. 694, Ann. Cas. 1916C, 589. In the absence of a demand for and refusal of a postponement of the trial, appellant has not shown prejudicial error in the allowance of the amendment. The trial court found as a fact that the quarter corner common to sections 28 and 33 as originally placed by the government survey was lost, and that the corner located by respondent's survey, on a direct line between the undisputed section corners common to sections 28 and 33, should be accepted as establishing the disputed boundary line.

[3, 4] Appellant contends that this finding is against the preponderance of evidence, and we are of the view that appellant is correct in this contention. The quarter corner claimed by appellant is located 1.85 chains north of the corner claimed by respondents, which a surveyor established on a direct line and at proper distances between the known section corners. The rule that this court will not disturb findings of a trial court, unless the same are clearly against the preponderance of the evidence, is so well settled that a citation of authorities to support it is unnecessary. Randall v. Burke Township, 4 S. D. 337, 57 N. W. 4; Unzelmann v. Shelton, 19 S. D. 389, 103 N. W. 646; First Nat. Bank v. McCarthy, 18 S. D. 218, 100 N. W. 14. The regulations governing surveys of public lands require a quarter section corner to be marked on an east and west line by a mound and two pits, one east and the other west of such mound. It is absolutely undisputed that a mound and two pits corresponding to the government regulations was observed, and existed undisturbed, at or in the vicinity of the point claimed by appellant, as early as and since 1885, and until 1912, when it appears to have been partially obliterated by plowing or other means.

The existence of such a corner is shown by an abundance of undisputed evidence. It is conceded that no corner or indication

of a government quarter corner ever existed on the direct line between the section corners. It is undisputed that no other corner or indication of a government corner was ever observed or found anywhere in the vicinity of the mound and pits claimed by appellant as the original corner. The genuineness of this corner is unimpeached, save by some slight divergence in the testimony of the witnesses as to its exact location, and by the field notes and plat of the original survey, which purport to locate the quarter corner on a straight line between the section corners; and by the existence of certain early landmarks in the way of fences north and south. Such fences are at different distances east from the corner, and are not themselves in alignment. The record is silent as to who built them. It is not claimed that they were built by appellant. Nearly all of the numerous witnesses, both of appellant and respondents, testified to having seen such a corner as that described by appellant at some time, and we think were substantially agreed as to its appearance and location. The physical existence of such a corner ever since 1885 is, we think, established beyond question, and the clear preponderance of the evidence favors the conclusion that it is an original government corner, erected by the government surveyors who made the survey in 1873, about 12 years before it was first observed by two of appellant's witnesses.

[5] The remaining question of importance is whether the finding and conclusion of the trial court, that appellant should be held estopped from claiming the land in controversy by reason of laches and acquiescence is sustained by the evidence. It is clear that neither plaintiff nor defendants ever intended to claim any land outside of or beyond the lines established by the original government survey, or outside of the true boundary line between their respective quarter sections. The only controversy is as to the location of the quarter section corner. The question of title by adverse possession for 20 years under the statute is not involved. As a general rule possession is not adverse when the parties intend to claim only as far as the true line. But the question of adverse possession may be conclusively determined by the length of time during which there has been acquiescence in a disputed boundary. When such acquiescence continues during the statutory period prescribed as a bar to re-entry, title may be acquired

through acquiescence alone. The rule that the presumption of an agreement fixing a division line is conclusive, where both parties have been in possession and use of their respective lands up to a dividing line marked by visible objects, such as a fence, is correlated to the rule of adverse possession, and is distinct from the rule of estoppel by acts or conduct. Such possession for the statutory period barring re-entry is conclusively presumed to be adverse, and the right is barred by the statute, without further proof that possession is adverse. Lawrence v. Washburn, 119 Iowa, 109, 93 N. W. 73; Morrow. Hall, 169 Iowa, 534, 151 N. W. 482. Estoppel, however, arises only where by conduct or acts the adverse party has been induced to alter his position, or to do that which he would not otherwise have done, and to his prejudice. Mere failure to bring an action does not create an estoppel. Hubbell v. McCulloch, 47 Barb. (N. Y.) 287; Reed v. McCourt, 41 N. Y. 435. In Hinkley v. Crouse, 125 N. Y. 731, 26 N. E. 452, it is held that where there was no consent to the original taking of possession, and the right to do so was disputed at the time, although no protest was made thereafter for a period of 10 years, the boundary line did not become established by reason of acquiescence, and in Buchanan v. Ashdown, 71 Hun, 327, 24 N. Y. Supp. 1122, it was held that each possession must continue for 20 years to ripen into a title. See, also, Sanford v. McDonald, 53 Hun, 266, 6 N. Y. Supp. 613.

In the case of Keller v. Harrison, 139 Iowa, 383, 116 N. W. 327, plaintiff, the owner of the N. E. ¼ of section 28, brought an action against the defendant Harrison, owner of the N. W. ¼, section 28, claiming that he was about 20 rods east over the line. The defendant denied that his occupancy was beyond the true boundary, interposed the defense of adverse possession and acquiescence, and demanded by counterclaim that the title be quieted in him. The court said:

"If plaintiffs succeeded in proving the location of the government line where they contended it should be, then the burden of proof was on defendant to prove that the division line had been acquiesced in so long and under such circumstances that it should be accepted as the boundary between the respective tracts."

Quoting with approval from its decision in the former case, the court also said:

"The doctrine of acquiescence is founded on the presumption of an agreement fixing the division line from long maintenance of a fence or other monument marking a line as boundary between the adjoining owners, and this is of such strength that after the lapse of 10 years, in the interest of peace and quiet, they are not permitted to gainsay the agreement thus inferred. * * * In the absence of controlling circumstances, acquiescence in the division line, assumed or established, accompanied by actual occupancy in accordance therewith by the adjoining owners for a period equal to that prescribed in the statute of limitations (10 years in Iowa) within which an entry may be barred, is conclusive evidence of such an agreement."

The trial court in the Keller case instructed the jury that:

"It is for you to determine, from all the evidence admitted upon the trial in relation thereto, whether the parties did in fact acquiesce in and consent to the boundary line as claimed by the defendant as being the true boundary line dividing the respective lands."

The instruction was held erroneous, the court saying the jury should have been told that:

"If defendant by himself, employes, or tenants, marked by the planting of trees, grove, or other improvements, a visible division line, in good faith believing it to be the true boundary, and for more than 10 years subsequent thereto occupied and made use of the land up to such line, and during such period the owners of plaintiffs' land occupied and cultivated their land up to such line, then they will be conclusively presumed to have agreed thereto as a boundary line, and neither party can be heard to say that the division line, so marked, is not the true boundary between them."

See, also, 9 C. J. 240, § 187, and cases cited.

[6, 8] These cases illustrate the distinction between the doctrine of estoppel by acts or conduct within the period of limitation and mere acquiescence in possession for the whole period of limitation. In this case the trial court held that plaintiff was estopped to claim the tract in dispute by reason of acquiescence in defendant's possession and use thereof from 1900 and laches in the commencement of this action. The facts found by the trial court upon which the ultimate conclusion of estoppel was based, are sub-

stantially: That in 1900 one Tiffany was the owner of the S. W. ¼ of section 28, and in the spring of that year built a fence inclosing the land in dispute, and remained in possession of and cultivated the same until the commencement of this action in 1914; that during said time appellant allowed and acquiesced in such use of the disputed tract; that in 1905 and 1906 appellant himself built a fence along the north side of the N. W. ¼ of section 33, which did not include the tract in dispute; that a public highway existed and was traveled south of the disputed corner, and between said lines of fence, since 1890. It also appears in the record that in 1885 and 1886 certain breaking was done and trees were planted, by appellant's predecessors in possession, along the north line of the N. W. ¼ of section 33, a little south of but in the general direction of the line claimed by appellant; that prior to 1900, the road traveled was north of the trees, but after Tiffany built his fence in that year, the travel was forced south by the fence and ran through a bend in the tree rows, leaving some of the trees inside the traveled road, and two or three inside Tiffany's fence. But the undisputed evidence shows that appellant at all times contended and insisted that the original government quarter section corner was at the point and was identical with the corner contended for by him at the trial; that when Tiffany built his fence, inclosing the disputed tract, appellant pointed out to him and claimed this corner to be the original government corner; that when Herman, as owner of the land, started to break south of the corner, appellant protested and called his attention to the same corner, and in fact, whenever any question concerning the location of the corner arose with any person, appellant asserted that the corner referred to was the original corner. In the entire record there is not a scintilla of evidence tending to show that appellant ever at any time conceded or agreed that the corner or the line in dispute was at any other place than that contended for at the trial. Neither is there a particle of evidence in the record tending to show that appellant by anything he ever did or said, induced respondent to do any act or make any expenditure which could be deemed prejudicial. The fact that appellant suffered respondent to remain in possession of and cultivate the disputed strip of land for a number of years, and appropriate to his own use crops raised thereon, and refrained from bringing ejectment, was beneficial rather than prejudicial to respondent. Nor was respondent put to additional

expense in building his fence, other or greater than would have been involved, had the same been built on the line contended for by appellant. We are of the view that no fact disclosed by the record and no act or failure to act on the part of appellant was of such character as to work an estoppel. Koontz v. Mylius, 77 W. Va. 499, 87 S. E. 851; Hill v. Collier (Tex. Civ. App.) 135 S. W. 1084; Harris vs. Lewis, 156 Iowa, 413, 136 N. W. 674.

The findings and conclusion of the trial court upon the question of estoppel are clearly against the preponderance of the evidence. We have examined the other assignments, but find no prejudicial error, and they are not of sufficient importance to warrant discussion. The findings of fact, conclusions, and judgment of the trial court are reversed, and the cause remanded for further proceedings according to law.