UNION INVESTMENT COMPANY, Respondent, v. SCHONE-
BAUM et al., Appellants.

(175 N. W. 357.)

(File No. 4356.   Opinion filed December 16, 1919.)

1.   Trial—Practice Re Amending Complaint—Broad Discretion of
Trial Courts, Whether Disturbed on Appeal—Correcting De-
scription of Note in Suit, Non-prejudice Re.

Trial courts are vested with broad discretion in amending
pleadings both before and during trial; and, when no prejudice
is shown to result therefrom, such discretion will not be dis-
turbed on appeal.   So held, in construing amendment to com-
plaint in a suit on a promissory note, correcting its descrip-
tion—which amendment was non-prejudicial.

2.   Negotiable Instruments—Defense of Fraud, Second Indorsee
Under Indorsement "In Due Course"—Default in Interest
After First Indorsement, Whether Constituting Dishonor—Date
of Re-indorsement, Immateriality—Parity of Rights of In-
dorsees.

Where the promissory note in suit was sold for face value
and indorsed in due course before due to plaintiff's indorsors,
who delivered it to plaintiff as collateral security for a loan,
maker defending on ground of fraud and misrepresentation
and that consideration had failed; held, that the mere fact
that when plaintiff took the note there was a year's interest
unpaid that had been due for several months, no default
having occurred when note came into original indorsees' hands,
they having taken it, "in due course"—did not constitute, dis-
honor of the note when it came into plaintiff's hands; since
original indorsees could reindorse and pass same title to their
indorsee which they possessed; and it was immaterial whether
the reindorsement was before or after maturity.

3.   Same—Indorsement as Collateral Security to Loan, With Agree-
ment for Security for Other Debts, Whether a New Contract
—Payment of Loan, Effect Re Further Collateral Security.

Where a promissory note was transferred by indorsees to
plaintiff as collateral security for a specified loan, there having
been a general agreement between the parties that all col-
lateral put up by plaintiff's indorsors should be held as security
for all indebtedness that might be owing from such indorsors
to plaintiff, held, that the fact that the specified loan had
been paid did not render such general agreement a new con-
tract under which the note became past-due paper and subject
to defenses of dishonored paper; that, plaintiff having ac-
quired note free from defenses existing against original payee,
he could hold same as security for any indebtedness agreed
upon, whether existing at time of transfer of note or subse-

quently, and this although note was past due when plaintiff reoeived it.   Uniform Negotiable Instrument Act not involved.

Appeal from Circuit Court, Gregory County.   Hon. WILLIAM WILLIAMSON, Judge.

Action by Union Investment Company, a corporation, against Martin Schonebaum and others, to recover upon a promissory note.   From a judgment for plaintiff, and from an order denying a new trial, defendants appeal.   Affirmed.

*P. J. Donahue, M. L. Parish,* and *G. M. Caster,* for Appellants.

*Boyce, Warren & Fairbank,* for Respondents.

(2) To point two of the opinion, Appellant cited: Bank v. Scott County, 14 Minn. 77; Newell v. Gregg (N. Y.), 51 Barb. 263; Union Nat. Bank v. Mailloux (S. D.), 132 N. W. 168; Bank v. Kirby, 108 Mass. 497.

Respondent cited: 8 Cor. Jur. 478; Cromwell v. County of Sac, State of Iowa, 96. U. S. 51, 24 L. Ed. 681; Higby v. Bahren fuss (Iowa), 163 N. W. 247.

(3) Under point three, Appellants submitted that: When the principal note for which the note in suit was pledged as collateral had been paid and surrendered back to the makers, the holder of the collateral note would have no greater protection in a suit upon it that the payee of the note would have.

Respondent cited: Moore v. Washburn (Mass.), 17 N. E. 884; 31 Cyc., p. 822; Mahaska County Bank v. Christ (Iowa), 54 N. W. 450.

POLLEY, J.   This action is brought to recover on a promissory note.   The note is dated at Bonesteel, February 16, 1905.   It is payable to "Emmetsburg Importing Company," at the Palo Alto County Bank at Emmetsburg, Iowa, on the 2d day of October, 1906, with interest at 6 per cent. per annum, payable annually.   The Emmetsburg Importing Company was a copartnership, doing business at Emmetsburg, Iowa.   On the 18th day of April, 1905, the Emmetsburg Importing Company indorsed and transferred said note to McLaughlin Bros., a copartnership, doing business at St. Paul, Minn.   This transfer was an absolute sale of the note for its full face value, and it was taken by McLaughlin Bros. without knowledge of any de-

fects or defenses as against the original payee of the note. McLaughlin Bros. retained the note until the 6th day of July, 1906, when this note and two others—amounting in all to $2,400—were indorsed by them and delivered to plaintiff as collateral security for a loan of $2,400 that day made by plaintiff to Mc-Laughlin Bros. For how long a time this loan was to run does not appear from the evidence, neither does it appear when it was paid; but the evidence shows that it was paid some time after October, 1906—"probably in the spring or summer of 1907." At the time this loan of $2,400 was made to McLaughlin Bros. by plaintiff, McLaughlin Bros. were already indebted to plaintiff to the extent of several thousand dollars, and it is also a fact that, from some time prior to the 6th day of July, 1906, down to the time of the trial, McLaughlin Bros. had been indebted to the plaintiff in an amount greatly in excess of said loan. These advances were evidenced by the promissory notes of said firm and secured by promissory notes that were owned by said firm which they put up as collateral security for such advances. The note involved in this case was not returned to McLaughlin Bros. when the debt it had been pledged to secure was paid, but was held by plaintiff as a part of the security for all other debts owned by McLaughlin Bros. to plaintiff. This, it is claimed, was done pursuant to an understanding, or agreement, between them that any collateral that came into its hands should be held as security for any and all debts owing from McLaughlin Bros. to plaintiff.

Defendants pleaded, and undertook to prove, that the note sued on was obtained from them by fraud and misrepresentation, and that the consideration therefor had failed. Plaintiff, to save the time of the court, admitted the facts pleaded as constituting a defense, and admitted that such facts would have constituted a valid defense to the action as against the original payee of the note, and stood strictly upon its rights as a "holder in due course." Upon this state of the case, the trial court took the case from the jury, made findings of fact and conclusions of law favorable to plaintiff, and entered judgment accordingly. From this judgment and an order overruling their motion for a new trial, defendants appeal.

[1]    At the trial, a question of practice arose over a request to permit plaintiff to file an amended complaint. The trial court allowed the amendment, and appellants assign error. Under the circumstances, we believe the trial court was warranted in allowing the amendment. Trial courts are vested with a broad discretion in the matter of amending pleadings, both before and during the trial, and, when no prejudice has been shown to result from such amendment, this discretion will not be disturbed by this court. The amendment in this case was only a correction in the description of the note, and did not prejudice the appellants in any manner.

[2]    It is next contended by appellants that the note was "dishonored" when it came into plaintiff's hands; and was therefore subject to all the defenses that were set up in the answer. This contention is based upon the fact that, when plaintiff took the note in July, there was a year's interest unpaid that had been due since the previous April. But no default had taken place when the note came into the hands of McLaughlin Bros., and they, having taken it in "due course," could reindorse it and pass the same title to their indorsee that they themselves had, and, under the law as it existed at that time, it was immaterial whether such reindorsement was made before or after maturity. Therefore, when plaintiff took the note, it acquired all the rights that it would have acquired had it been the original indorsee before maturity and before default had taken place in the payment of interest. This rule is well settled by a practically unbroken line of authorities. In the headnote to Koehler v. Dodge et al., 31 Neb. 328, 47 N. W. 913 (28 Am. St. Rep. 518), the rule is stated as follows:

"When a negotiable note is purchased after maturity from an innocent holder for value, the purchaser takes it free from all equities and defenses that existed between the original parties to the paper." Joyce on Defenses to Com. Paper, §§ 433 and 489.

See, also, Comstock v. Hannah, 76 Ill. 535, and Matson v. Alley, 141 Ill., 284, 31 N. E 419, and cases cited.

23—Vol. 42, S. D.

In Newell v. Gregg, 51 Barb. (N. Y.) 263, and Bank v. Commissioners, 14 Minn. 77 (Gil. 59), 100 Am. Dec. 194, relied upon by appellants, default was made in the payment of an installment of interest prior to the first endorsement, so that under the rule contended for by appellants there never was an indorsee in "due course" in either of those cases.

[3] It is further contended that the $2,400 loan that the note in question, with others, was transferred to secure, was paid after the maturity of the note involved in this case, and that, if said note was taken or retained after maturity as security for any other debt, this would consttute a new contract, and the note then, being past-due paper, was subject to the defenses of dishonored paper. It was shown that this loan was paid in full, "some time after October, 1906—probably in the spring or summer of 1907." But this is immaterial. The evidence showed that plaintiff had a general agreement with the McLaughlin Bros. that all collateral put up by their firm was to be held by plaintiff as security for any and all indebtedness that might be owing from McLaughlin Bros. to plaintiff. Plaintiff, having acquired the note free from defects or defenses that may have existed against the original payee, had a right to hold the same as security for any indebtedness agreed upon, whether the same existed at the time the note was transferred to plaintiff or was created at some subsequent time. And this would be equally true, even though the note had been past due when it cam into plaintiff's hands. McLaughlin Bros., being innocent purchasers for value, could indorse the note after maturity and give plaintiff as good title as they themselves had.

All the transactions involved in this case took place prior to the enactments of our so-called Uniform Negotiable Instruments Act (Laws 1913, c. 279), and the case must be disposed of without reference to the provisions of that act.

The judgment and order appealed from are affirmed.