IOWA GUARANTEE MORTGAGE CORP., Respondent, v.
GENERAL MOTORS ACCEPTANCE CORP., Appellant.

(250 N. W. 669.)

(File No. 7529. Opinion filed October 26, 1933.)

*T. R. Johnson,* of Sioux Falls, and *Stinchfield, Mackall, Crounse, McNally & Moore* and *Donald A. Holmes,* all of Minneapolis, Minn., for Appellant.

*J. G. Bradford* and *Sioux K. Grigsby,* both of Sioux Falls, for Respondent.

ROBERTS, J. The defendant, a finance corporation, furnished the McRae Chevrolet Company, a retail dealer in Chevrolet automobiles at Salem, S. D., with automobiles and trucks on what is commonly termed the floor plan. When this dealer ordered a shipment from the factory, the manufacturer would make shipment and execute a bill of sale to the defendant. The defendant company would then forward the bill of lading to a bank at Salem, together with a sight draft for approximately 10 per cent of the purchase price, a note for the balance, and a trust receipt. The dealer would pay the amount of the draft and the freight, execute and deliver the trust receipt and the note, and take possession of the motor vehicles. The trust receipts contained provisions wherein the dealer agreed to hold the motor vehicles in trust for the defendant, not to use them for demonstration purposes and to return them upon demand to the defendant. The dealer further agreed not to sell, incumber, or otherwise dispose of the same until all payments were completed.

The dealer on or about the 6th of July, 1931, represented to an agent of the plaintiff, which is also a finance corporation engaged in purchasing chattel mortgages and conditional sale contracts, that a Chevrolet coach had been sold to one C. Hillman on a conditional sale contract. and offered the contract to the plaintiff. After investigating the credit of the purported purchaser and finding the same to be satisfactory, the plaintiff purchased such note and contract, made payment in cash, and caused the contract and

assignment to be filed in the office of the register of deeds of McCook county, S. D. Thereafter and on or about the 31st of July, 1931, the dealer represented that he had sold a Chevrolet sedan to one John Brady on a conditional sale contract. After the customary investigation of credit of the purchaser the note and contract were acquired by the plaintiff, and the contract and assignment were duly filed. A third transaction involved the sale of a Chevrolet truck upon which the defendant held a trust receipt. The truck was sold to one Clyde Johnson on conditional sale contract, and the note and contract given by Johnson were purchased by the defendant company. Johnson defaulted, and the truck was repossessed by the defendant and placed in possession of the dealer, McRae Chevrolet Company, for sale. The conditional sale contract, however, was not filed by the defendant company until December 31, 1931. Subsequent to the repossession of the truck the dealer represented to the plaintiff that the truck had been sold to one Mike Cheadle on conditional sale contract which after investigation of the credit standing of the purported purchaser was acquired by the plaintiff, together with the note. The contract and assignment were filed in the office of the register of deeds of McCook county on August 3, 1931.

The automobiles and the truck were never in fact delivered to the purchasers named in the conditional sale contracts assigned to the plaintiff. They remained in the possession of the McRae Chevrolet Company until it discontinued business during the month of September, 1931, and were taken into possession thereafter by the defendant company. This action was tried before the court, and findings of fact and conclusions of law were made and judgment was rendered in favor of the plaintiff, from which judgment and an order denying motion for new trial defendant appeals. The trial court concluded that the defendant by placing the automobiles and the truck in the possession of the dealer with knowledge that they would be offered to the public for sale and permitting the plaintiff to purchase the contracts thereon in the usual course of business was estopped as against the plaintiff to claim any title or interest in the automobiles and truck. In other words, plaintiff does not claim, and the court did not so find, that its right is dependent upon the securing of actual title, but rests upon estoppel which precluded the defendant company by reason of its conduct from disputing the existence of title in an innocent party.

██ It is a general rule applicable to personal property that no one can transfer or confer a better title than he has unless some principle of estoppel operates to bar a claim under an otherwise better title. The mere possession of chattels, by whatever means acquired, if there is no other evidence of property rights therein or authority to sell given by or for the true owner, will not enable the possessor to give a good title. 24 R. C. L. 373 et seq. Under the undisputed facts the legal title to the automobiles and truck at the time of the purported assignments of conditional sale contracts to the plaintiff was in the defendant company. But counsel for plaintiff contend that the fact that the defendant permitted the dealer to have the automobiles and truck at its place of business under circumstances that indicated authority to sell estopped the defendant from asserting its title as against the plaintiff who did not have either actual or constructive notice of defendant's title. In support of its contention plaintiff cites 24 R. C. L. 379; Pacific Finance Corp. v. Hendley, 103 Cal. App. 335, 284 P. 736, 737, 285 P. 1048; Gump Investment Co. v. Jackson, 142 Va. 190, 128 S. E. 506, 507, 47 A. L. R. 82; Jones v. Comm. Investment Trust, 64 Utah, 151, 228 P. 896; Bass, Heard & Howle v. International Harvester Co., 169 Ala. 154, 53 So. 1014, 33 L. R. A. (N. S.) 374; Kearby v. Western Securities Co., 31 Ariz. 104, 250 P. 766. With reference to the question of estoppel, the court in Pacific Finance Corp. v. Hendley, supra, said: "It is equally well settled that, if personal property is delivered, under a conditional sale contract, to a buyer who is engaged in the business of selling property of the same kind, and, with the knowledge of the seller, is placed on display for sale with such other property, the holder of the reserved title is estopped to assert it against a bona fide subvendee for value. * * * In such a case the rights of the innocent subvendee 'do not depend upon the actual title or authority of the party with whom he deals directly, but are derived from the act of the real owner, which precludes him from disputing, as against the innocent party, the existence of the title or power which, through negligence or mistaken confidence, he has caused or allowed to be vested in the party making the sale.' "

In the case of Gump Investment Co. v. Jackson, supra, it was held that "One conclusion is that some duty, at least, rests upon an individual, corporate or otherwise, who finances a retail dealer,

to see to it that cars upon which he has a lien are not left under the domain and control of such dealer on his salesroom floor, to be offered to the public. The business of the Gump Investment Company was to finance retail automobile dealers, and it did finance them for a profit. It assumed some risk both as to the moral and financial standing of every dealer it financed."

 The principle of the foregoing cases is not applicable to the facts in this case. They involve sales to bona fide purchasers for value. The plaintiff in the case at bar never intended to take possession or delivery of the motor vehicles from the dealer, and sales separate and distinct from the assignment of the contracts did not result. Assuming for purposes of decision that the rule of estoppel may apply where there is in fact no bona fide sale, we do not believe that the rule would be applicable to the facts established in this case. To create an estoppel, there must have been some act or conduct upon the part of the party to be estopped which has in some manner misled the party in whose favor the estoppel is sought and has caused such party to do some act relying upon the conduct of the party to be estopped, thus creating a condition that would make it inequitable to allow the guilty party to claim what would otherwise be his legal rights. Somers v. Somers, 27 S. D. 500, 131 N. W. 1091, 36 L. R. A. (N. S.) 1024. It is not sufficient to show that the conduct might have misled a party to his prejudice. It must affirmatively appear that the party asserting the estoppel was in fact misled to his prejudice. Farmers' Shipping Association v. Nordgren, 56 S. D. 152, 227 N. W. 576. It appears, without conflict, that the plaintiff had no information with reference to the possession of the motor vehicles; the manager of the plaintiff company who conducted the transactions with the dealer never saw the motor vehicles in the possession of the dealer. If the descriptions of the motor vehicles in the contract had been fictitious or the motor vehicles were not in existence, the plaintiff would have been in no different situation than it now finds itself.

For these reasons the judgment and order appealed from are reversed.

All the Judges concur.