WEAVER, Plaintiff-Respondent v. BAUER et al., Defendants-Appellants and BAUER et al., Defendants-Respondents

(79 N.W.2d 361)

(File No. 9562. Opinion filed November 13, 1956)

**G. F. Johnson,** Gregory, **Claude Maule,** Winner, for Plaintiff and Respondent.

**Stephens, Riter & Mayer,** Pierre, for Appellants.

**J. F. Corcoran,** White River, for Defendants Lawrence A. Bauer and Ruth E. Bauer.

RUDOLPH, J.   Plaintiff seeks a dissolution of a farming venture and an accounting. The trial court entered judgment for plaintiff and defendant, Herbert Bauer, has appealed. Only one issue is presented to this court, and that, is whether appellant, had the right to farm certain land belonging to plaintiff during the period commencing Nov. 1, 1954 and ending Nov. 1, 1955.

Defendant contends that plaintiff orally leased the land to him for the period of time in dispute, and in any event, that plaintiff is estopped to deny defendant's right to farm the land during the disputed time.

There are certain undisputed facts which should be stated.   Plaintiff owned and operated a large ranch and farm in Mellette County.   In the summer of 1952 he entered into a contract with Herbert Bauer and his brother Lawrence Bauer for the operation of this ranch and farm from Sept. 1, 1952 until Nov. 1, 1954.   Under the agreement the Bauer brothers were to take over the actual operation and there were certain stipulations regarding the livestock and farming.   The Bauer brothers also purchased machinery from plaintiff.   A mortgage on the machinery was executed to secure the purchase price.   The mortgage provided for payments of $3,600 a year commencing Nov. 1, 1953.

The amount due in 1953 was paid.   In the summer of 1954 it was agreed that Lawrence would be relieved of his obligation under the contract and mortgage and Herbert would "take over the land and machinery and assume the unpaid balance on the chattel mortgage", except that Lawrence was to pay his share of the 1954 payment, and certain machinery was to be returned to plaintiff for which credit was to be given.   It was also agreed during the early summer of 1954 that the provisions of the contract relating

to the cattle should be abandoned. However, the accounts of the parties were never settled nor was Lawrence ever formally released from the mortgage.

The issue presented in this case centers around a conversation between Herbert and the plaintiff in August 1954, and the actions of these parties subsequent thereto. Herbert testified that by this conversation plaintiff orally leased him the farm land of this ranch, and in reliance on that oral lease he prepared the ground and sowed approximately 450 acres of winter wheat, and prepared other ground for spring sowing. Herbert lived upon the premises until March, 1955 when trouble developed between the parties and this action was started.

Plaintiff takes the position that this conversation in August amounted to nothing more than an agreement to enter into a written lease with Herbert for the next crop year when and if Herbert paid the amount owing under the mortgage and an accounting was had relating to other items arising out of the cattle and farming operations.

In view of the holding of the trial court we are bound by that version of the testimony most favorable to plaintiff. Plaintiff testified concerning this August conversation.

"A He wanted _ _ _ he said that _ _ _ asked if he could have the farming, and he asked me if I would go ahead in the fall _ _ _ with the fall operation, to turn it to him, and I said I would providing that we drew up a written contract. It was to be drew up between him and I after _ _ _ all our differences in money and that had been settled _ _ _ his payment had been made and the amount for the machinery was turned over to him.

"Q Was there anything said about what farming, for how many years, or anything like that? A He said he wanted to put in the winter wheat and I said I could rent the land out for one-third without any buildings to the neighbors, which a couple of them had asked me, and he wanted it so I told him I would let him have it the same way I would let the neighbors have it.

"Q For how long a term? A For one year."

He further testified that following this agreement Herb put in the 450 acres of winter wheat and did other fall plowing and work. Plaintiff lived on the premises near the house occupied by Herbert and in fact directed where a part of the wheat should be sown.

Plaintiff testified that there was no further conversation concerning business affairs between him and Herb until some time in November, 1954, when there was a discussion about plaintiff buying Herb's corn. In December there was another discussion about the purchase of this corn, and again in January, 1955. In Februaary, 1955, plaintiff was advised that Herb had sold his corn. In the latter part of February plaintiff asked Herb to make a settlement of their accounts and about March 1 the two met and in the discussion tempers flared and fisticuffs ensued. This action was then started.

Plaintiff testified that at the November conversation Herb said "he had three thousand bushels of corn and he would sell it to me and apply it on the machinery payment."

Plaintiff also testified that the cattle in which Herb had an interest were all branded with plaintiff's brand. The cattle were divided between them in November, 1954, and in January, 1955 Herb said "he wanted a bill of sale to the cattle that had my brand on. He said if I did that he would put the money in the bank and settle up before he did anything with the money from the cattle."

Plaintiff received no money from either the corn or the cattle, and there was no settlement of the accounts between the parties.

As stated above the trial court accepted plaintiff's testimony. Giving effect to this testimony there was to be no leasing of the land until the accounts were settled and a written lease executed, which would amount only to an agreement to lease when certain conditions were met.

■ Should plaintiff be estopped to deny the existence of a lease? The fact that plaintiff permitted defendant to occupy the house on the premises from November until March is without probative value on the issue of estoppel because it appears that defendant's occupancy of the house

was under an agreement with plaintiff that defendant would perform certain work for plaintiff and be paid therefor at the rate of $175 a month and be permitted to occupy the house.

It also appears that the delay in settling the account between the parties was at least due in part, if not entirely, to the promises made by defendant first to apply the corn money to the indebtedness owing plaintiff and second to so apply the money from the sale of cattle and his failure to do either.

In this connection the trial court found first, that the defendant on different occasions promised to settle his accounts with plaintiff, and second, that plaintiff on several occasions attempted to get defendant to settle but defendant neglected to do so. The trial court could not find specifically that defendant was acting in bad faith. However, defendant was neglecting to meet the condition upon which his right to a lease of the premises depended, knowing that plaintiff was demanding that he meet such condition, and thereby fulfill his part of the agreement which entitled him to a lease. Had he met this condition there is nothing in the record to indicate other than that plaintiff would have kept his part of the agreement and leased the premises to defendant. Under these circumstances defendant is in an unfavorable position to claim an estoppel since this doctrine "is founded upon principles of morality and fair dealing." 19 Am.Jur., Estoppel, § 86. But we do not rest our decision upon this ground.

Essential to an estoppel is a reliance by the person claiming the estoppel upon the words, acts or conduct of the party against whom the estoppel is asserted. As stated by the court in the case of Iowa Guarantee Mortgage Corp. v. General Motors Acceptance Corp., 62 S.D. 18, 250 N.W. 669, 670, "To create an estoppel, there must have been some act or conduct upon the part of the party to be estopped which has in some manner misled the party in whose favor the estoppel is sought and has caused such party to do some act relying upon the conduct of the party to be estopped, thus creating a condition that would make it inequitable to allow the guilty party to claim what would otherwise be his legal rights."

■ Under the findings of the trial court we are unable to conclude that defendants' acts were performed relying upon a belief that he had a lease. Defendant was specifically advised that his right to a lease was dependent upon the settlement of his account with plaintiff, which settlement he neglected to make. The trial court having accepted plaintiff's version of the dealings between the parties, this version is, of course, binding on the defendant. Defendant's position under this version of the testimony is simply that he expected to lease the premises when his account with plaintiff was settled and went ahead with the farming based on this expectation. These acts under these circumstances do not constitute a basis for an estoppel. Laabs v. Scholl, 43 S.D. 515, 180 N.W. 963; Palen v. Pierce, 44 S.D. 316, 183 N.W. 973.

■ The trial court allowed defendant the value of all work performed and all expense in preparing and seeding the land. This was the proper measure of damages under the rule established in Laabs v. Scholl, supra.

■ Appellant complains because the trial court, after the case was first submitted, permitted plaintiff to amend his complaint and submit additional testimony. Permitting or refusing amendments to pleadings and reopening a case is largely discretionary with the trial court. The amendment of the pleadings simply conformed to proof already in the record. Evidence presented after the case was reopened was not prejudicial to defendant. Under these circumstances we cannot hold there the trial court abused its discretion.

The judgment appealed from is affirmed.

SMITH and RENTTO, J.J., concur.

ROBERTS, P. J., and HANSON, J., dissent.

HANSON, J. (dissenting). I am unable to concur in the majority opinion. Conceding that the execution of a written contract and settlement of accounts were conditions precedent to an effective lease they, nevertheless, were conditions that could be, and were, waived by the plaintiff. His actions and conduct speak more clearly in this regard than do his contradictory pleadings and testimony. The terms of the

lease were fully agreed upon by the parties which distinguishes the instant case from that of Palen v. Pierce, 44 S.D. 316, 183 N.W. 973. Performance of the conditions was not deemed essential to a lease until after the altercation between the parties in March, 1955. Until then the defendant occupied the farm land, in all respects, as a lessee with the full knowledge, approval and consent of the plaintiff. The plaintiff even directed some of the fall planting operations. He waited an unreasonable length of time to demand performance of the conditions precedent. He should now be estopped from taking a position inconsistent with his acts and conduct. The cause should be remanded for further proceedings.

ROBERTS, P.J., concurs in this dissent.