**Harry ANDREE, Plaintiff and Appellant,**

v.

**Laura C. ANDREE, Adolph Roth, LaVerna Roth, Jerry J. Kost, Sharon A. Kost, and Clarence Mogck, Defendants and Appellees.**

**No. 12883.**

Supreme Court of South Dakota.

Argued Feb. 26, 1980.

Decided April 30, 1980.

John P. Blackburn of Blackburn Law Offices, Yankton, for plaintiff and appellant; Michael D. Stevens of Blackburn Law Offices, Yankton, on the brief.

Lloyd J. Mahan, Parkston, for defendants and appellees Laura C. Andree and Clarence Mogck.

Jay H. Tapken, Olivet, for defendants and appellees Adolph Roth, LaVerna Roth, Jerry J. Kost and Sharon A. Kost (argued the cause for all defendants and appellees).

WUEST, Circuit Judge.

Appellant brought this action against his sister, Laura C. Andree, and others wherein he claims that his mother signed a deed conveying 240 acres of real estate to his sister (his only sibling) at a time when his mother was legally incompetent. He claims

one-half of the real estate, or the proceeds thereof, and joined the other defendants because his sister had sold the land to them. The deed is dated May 26, 1966. The action was commenced March 27, 1978. We affirm.

Appellees Andree and Mogck, represented by Attorney Lloyd J. Mahan, answered by way of a general denial. Appellees Roth and Kost generally denied the allegations and alleged the affirmative defense of bona fide purchasers in good faith for value, and in addition cross-claimed against appellee Laura C. Andree for any damages they might sustain. The case was set for trial on May 8, 1979. The record is unclear when this date was selected. In any event, on or about April 11, 1979, Mr. Mahan contacted counsel for appellant and inquired whether or not he objected to amendment of the answer of defendants Andree and Mogck to include the defenses of laches, statute of limitations, the statute of frauds, and waiver. Appellant's counsel had some reservations, so several days later Mr. Mahan mailed him a copy of the proposed amended answer. Thereafter, a written stipulation was entered into by counsel whereby the motion to amend could be heard on the date of trial. There was no claim of surprise, nor was there any request for a continuance. On appeal, however, appellant alleges error in permitting the amendment a year after the original answer was filed.

The rule on amendment of pleadings is found in SDCL 15–6–15(a). It provides that amendments should be freely given when justice so requires. SDCL 15–6–15(b) provides for amendments to conform to the evidence, and provides that the court shall allow pleadings to be amended freely so long as the amendments do not prejudice a party. The rule also allows the trial court to grant a continuance to an objecting party to meet evidence admitted under amended pleadings during trial.

■ Trial courts are vested with broad discretion in the matter of amending pleadings, both before and during the trial, and when no prejudice has been shown to result from an amendment, the trial court's dis-

cretion will not be disturbed. *Union Investment Co. v. Schonebaum*, 42 S.D. 350, 175 N.W. 357 (1919). A motion to amend is addressed to the sound discretion of the trial court and will not be disturbed on appeal, except in a clear case of abuse of discretion. *Raney v. Riedy*, 71 S.D. 280, 23 N.W.2d 809 (1946). Where there is no showing of prejudice or an abuse of discretion, the decision of the trial court will be upheld. *Behringer v. Muchow*, 72 S.D. 80, 30 N.W.2d 5 (1947). Permitting or denying amendments is largely within the discretion of the trial court. *Zahrowski v. Dahl*, 78 S.D. 255, 100 N.W.2d 802 (1960); *Weaver v. Bauer*, 76 S.D. 401, 79 N.W.2d 361 (1956).

■ We find no prejudice to appellant, nor any abuse of discretion by the trial court.

After the amendment was granted, trial was held and the court rendered its decision in favor of appellees based upon SDCL 15–3–15, which provides as follows:

Every person in the actual possession of lands or tenements under claim and color of title made in good faith, and who shall have continued for ten successive years in such possession, and shall also during said time have paid all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements to the extent and according to the purport of his paper title. All persons holding under such possession by purchase, devise, or descent before said ten years shall have expired, and who shall have continued such possession and payment of taxes as aforesaid so as to complete said term of ten years of such possession and payment of taxes, shall be entitled to the benefit of this section.

The requirements of this statute include (1) claim and color of title made in good faith, (2) ten successive years in possession, and (3) payment of all taxes legally assessed.

■ Appellant does not contest the fact that appellee met the requirements of this statute, including possession under claim and color of title, but he strongly

argues that the evidence does not support a conclusion that the possession was under claim and color of title "made in good faith." Since the court found that appellee held the property in good faith, the issue is whether this finding is clearly erroneous, SDCL 15–6–52(a). What constitutes good faith is a question for the trier of fact. *Armstrong v. Cities Service Gas Company*, 210 Kan. 298, 502 P.2d 672 (1972). The question for the appellate court is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed. *Yadco, Inc. v. Yankton County*, 89 S.D. 651, 237 N.W.2d 665 (1975); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970).

■ Bad faith is never presumed; one who challenges the good faith of the occupant in this type of case must overcome the presumption of good faith. 2 C.J.S. Adverse Possession § 219; *Thurmond v. Espalin*, 50 N.M. 109, 171 P.2d 325 (1946).

■ With these principles in mind, we review the evidence to determine whether the trial court's decision was clearly erroneous. As in most lawsuits, the evidence is conflicting and the trial court could have decided the question either way.

Appellant and his sister were the only children of Bertha Andree, who owned the 240 acres in question, located in Hutchinson County, South Dakota. Appellee never married, but lived with her parents and worked on the farm until she was fifty-four years of age, when her mother, the surviving parent, died on June 4, 1966. Appellant had moved away from the farm and married. Although appellant had problems with his parents, they gave him money from time to time. According to appellee, appellant came home only when he needed money. She testified that her parents said that she was to receive 160 acres of land and that appellant was to receive 80 acres. According to appellee's testimony, during her mother's final hospitalization in the spring of 1966 she was directed by her mother to get a deed prepared conveying the property to appellee. It was also agreed, according to her testimony, that appellant was to get 80 acres and that appellee was to get 160 acres, but because appellant had some judgments against him it was decided that all of the land would be conveyed to appellee. Appellee went to a lawyer, who prepared the deed, and on May 26, 1966, the mother purportedly executed the deed. According to appellee's testimony, appellant gave his mother a pen. Appellee then placed a book under the document and watched appellant help his mother make the "X" on the deed. The trial court asked appellee these questions:

THE COURT: All right. Well, I have several. At the time that this deed was signed by your mother, what type of condition was she in?

A. Well, she talked to me and after the deed was signed and everything and she told me what I was supposed to do. She told me not to stay on the farm; sell the farm; go to town, she says. You did your share of work.

THE COURT: Let me ask you this, at the time the deed was signed, what would your testimony be, did it appear to you she understood what she was doing?

A. Yes.

After the deed was witnessed and acknowledged, appellant had it recorded. Appellee paid for the recording. Appellee testified that on August 11, 1966, some two months after her mother's death, she received a letter from appellant demanding his 80 acres; she immediately went to a lawyer, who prepared a deed conveying 80 acres to appellant. Four days later appellant reconveyed the 80 acres to her. Appellee reconveyed 80 acres to appellant. Since that time appellee has rented out and paid the taxes on the 160 acres. Appellant conveyed the 80 acres to his wife on January 9, 1967.

According to appellant's evidence, his mother was irrational during her last illness and was unconscious when the "X" was placed on the deed. It was for the trial

court to weigh the evidence and to judge the credibility of the witnesses. The trial court chose to believe appellee and her witnesses. In view of the conflicting testimony and in view of the fact that appellant had the burden of proving bad faith, we cannot say that the trial court's decision was clearly erroneous.

In view of our decision, it is unnecessary to decide whether the other appellees are bona fide purchasers in good faith for value.

The judgment of the trial court is affirmed.

WOLLMAN, C. J., and HENDERSON and FOSHEIM, JJ., concur.

DUNN, J., dissents.

WUEST, Circuit Judge, sitting for MORGAN, J., disqualified.

DUNN, Justice (dissenting).

I dissent.

I am in complete agreement that the deed in this case accomplished the intent of the mother and that an equitable result was reached. I am also convinced that the plaintiff and defendant were equally responsible for the manner in which this signature was obtained.

I am more firmly convinced, however, that a court should never countenance the execution of a written instrument by one party holding a pen in the limp hand of a dying woman while the other party pushes her arm up and down to make an X for a signature on a deed! This is further compounded in the notary's certification of the signature by a person admittedly in the hospital but who "may or may not" have been in the room to witness this bizarre event.