Vera E. JORDAN and Dale A. Jordan,
Plaintiffs and Appellees,

v.

Andrew DUPREL, Defendant
and Appellant.

No. 13107.

Supreme Court of South Dakota.

Argued Nov. 25, 1980.

Decided April 1, 1981.

Dale L. Morman of Morman, Smit, Shepard, Hughes & Wolsky, Sturgis, for plaintiffs and appellees.

William H. Coacher, Sturgis, and Hermon B. Walker of Walker, Lysaught & Waggoner, Ltd., Rapid City, for defendant and appellant.

HENDERSON, Justice.

## ACTION

This is an action of forcible entry and detainer based upon the breach of a lease instituted by Vera E. Jordan and Dale A. Jordan (appellees) against Andrew Duprel (appellant). From a final judgment entered in favor of appellees pursuant to a jury verdict, appellant filed and perfected this appeal. We affirm.

## FACTS

Appellees own a 3,300 acre ranch in Meade County, South Dakota. The parties, all experienced ranchers, entered into a written lease dated January 10, 1978, which gave appellant the grazing rights on appellees' land for a period of seven years at the rental cost of $33,000 per year ($16,500 payable on or before January 15th, and $16,500 payable on or before October 1st of each year during the term of the lease). The rental land was divided up into five pasture areas. No limitation as to the number of livestock permitted on the lease land was incorporated into the lease. There was, however, a provision in the lease which prohibited appellant from overgrazing the land.

Appellee Dale Jordan told appellant in June of 1979 that overgrazing had occurred in 1978. According to appellee Dale Jordan, appellant admitted that he had over-grazed the land in 1978. In the spring of 1979, there was a significant lack of rainfall. These concurrent circumstances produced very sparse grazing conditions. Appellee Dale Jordan told appellant that he had too many cattle on the ranch. Appellant did not, however, reduce the herd. On June 13, 1979, appellees' attorney sent appellant a letter which stated: "In order to alleviate the overgrazing situation, this livestock [livestock which appellant was at that time grazing] must be moved off the leased premises within thirty days from this 13th day of June, 1979." Immediately after receipt of this letter, appellant removed approximately 350 head of cattle from pasture area number five and rotated his cattle on the remaining four pasture areas until August 23, 1979, when all of the cattle were removed from the leased land.

On August 31, 1979, appellees' attorney sent a letter to appellant's attorney which stated, among other things, that due to the severe overgrazing which had occurred on the leased premises, "under no circumstances will [appellees] tolerate any livestock being grazed upon this ranch property, not only during the balance of the calendar year of 1979 but also during the growing season of this coming year ... 1980." Notwithstanding this letter, on October 1, 1979, appellant paid appellees $16,500 rent on the land for the second half of 1979. On or about October 24, 1979, appellant allowed approximately 65 head of cattle to graze on pasture area number one. On October 26, 1979, appellees' attorney sent appellant a letter notifying him that the lease was to be terminated on November 1, 1979, due to his violation of paragraph VI of the lease, which dealt with the prohibition of overgrazing. Appellant was also told to remove himself and his property from the land. A notice to quit was served upon appellant on November 2, 1979, and a complaint for forcible entry and detainer was filed by appellees against appellant on November 21, 1979. By Thanksgiving of 1979, approximately 315 head of appellant's cattle were grazing on pasture number one. A jury found for appellees upon the issue of termi-

nation of the lease and a judgment was entered terminating the lease and requiring appellant to immediately redeliver the ranch to appellees.

## ISSUES

### I.

Did the trial court err by permitting appellees to amend their complaint during the course of the trial by striking the allegation of waste as being surplusage? We hold that it did not.

### II.

Did the trial court err in ruling that appellees' acceptance of rental payments from appellant does not estop them from asserting a breach of the lease? We hold that it did not.

### III.

Are SDCL 21–16–1(7) and SDCL 21–16–7 unconstitutional for want of due process? We hold that they are not.

## DECISION

### I.

Appellant contends that the trial court erred by allowing appellees to amend their complaint pursuant to SDCL 15–6–15(a) and SDCL 15–6–15(b). Originally, appellees' complaint stated in part: "That [appellant] violated the terms of the lease . . . and in so doing, committed waste upon the property and continued to commit such waste[.]" This is the only portion of the complaint which mentions or refers to the word "waste." The complaint also stated six separate times that appellant had violated the terms of the lease. After one-third of the jury trial had progressed, and before appellant had produced any evidence, appellees motioned the trial court to amend their complaint for the purpose of eliminating any surplus language therein. Specifically, appellees moved to strike all references to the word "waste" in the complaint. Over appellant's objection, this motion was eventually granted.

Appellant argues that he was prejudiced by this amendment since it allegedly allowed a new theory of recovery (forcible entry and detainer due to a breach of the lease) to be raised for the first time. It is contended by appellant that he believed that appellees were proceeding under SDCL 21–7–1 and SDCL 21–7–2 (actions for waste against a tenant) and not SDCL 21–16–1(7), which provides in pertinent part:

An action of forcible entry and detainer, or of detainer only, is maintainable:

. . . .

(7) Where a lessee commits waste upon the leased premises, or does or fails to perform any act which, under the terms of the lease operates to terminate the same.

Appellant urges that the amendment's effect was to deny him an absolute defense to the action as he maintains it was originally pleaded; that is, under a theory of waste. This absolute defense is embodied in SDCL 21–7–2, which requires that the amount of damages sustained by a plaintiff equal or exceed the value of the tenant's (appellant's) unexpired term. Here, this amount would total $132,000 ($33,000 per year multiplied by four years). Appellees prayed for only $53,910 in damages.

SDCL 15–6–15(a) provides that amendments should be "freely given when justice so requires." SDCL 15–6–15(b) states: "Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment[.]" We recently addressed this issue in *Andree v. Andree*, 291 N.W.2d 788, 790 (S.D.1980) (citations omitted), wherein we stated:

Trial courts are vested with broad discretion in the matter of amending pleadings, both before and during the trial, and when no prejudice has been shown to result from an amendment, the trial court's discretion will not be disturbed. . . . A motion to amend is addressed to the sound discretion of the trial court and will not be disturbed on

appeal, except in a clear case of abuse of discretion. . . . Where there is no showing of prejudice or an abuse of discretion, the decision of the trial court will be upheld. . . . Permitting or denying amendments is largely within the discretion of the trial court.

We do not believe that the trial court abused its discretion in permitting appellees' complaint to be amended. The complaint, as it was originally worded, gave appellant sufficient notice as to appellees' cause of action. Furthermore, in his answer and counterclaim, appellant alleges that appellees' complaint "is invalid and ineffective as a matter of law in that [it] lacks verification as required by SDCL 21–16–6." This verification requirement is found in SDCL ch. 21–16, which deals with forcible entry and detainer actions. No such requirement is found in SDCL ch. 21–7, which deals with actions for waste. This would indicate that appellant realized that appellees were originally bringing suit under SDCL ch. 21–16 and not SDCL ch. 21–7.

## II.

Appellant secondly contends that appellees' acceptance of rent on October 1, 1979, estops them from maintaining an action for a breach of the lease; that is, appellant maintains that appellees knew of the overgrazing as early as 1978 yet they continued to collect rent. Hence, by their acquiescence to the breach, appellant argues, appellees waived their right to enforce the lease.

■ Estoppel or waiver exists when a landlord, by his actions or words, implicitly permits a tenant to violate a provision of the lease over such a period of time so as to cause the tenant to reasonably depend on those actions or words; and, after these events, the landlord is estopped from taking a position inconsistent with his earlier actions. *Reichert v. Reichert*, 77 S.D. 258, 90 N.W.2d 403 (1958); *Skillman v. Lynch*, 74 S.D. 212, 50 N.W.2d 641 (1951); 51C C.J.S.

Landlord and Tenant § 339 (1968). This type of standard must be applied to the specific facts of each case to determine whether estoppel exists. 49 Am.Jur.2d Landlord and Tenant § 1064 (1970).

■ There can be little doubt that appellees knew that appellant was overgrazing the leased land in 1978. Rather than bring an immediate action for breach, however, appellees continually warned appellant to modify his grazing practices so as to allow the land to recover before permanent damage resulted.[1] When appellees received the bi-annual rent payment from appellant on October 1, 1979, appellant had seemingly acquiesced to appellees' letter of August 23, 1979, which demanded that appellant not graze any livestock on the land until it had sufficiently recovered. Appellant had removed the cattle after this demand and appellees could have reasonably believed that this compliance would continue. By October 24, 1979, however, appellant had placed livestock back on the land.

We do not agree with appellant's contention. Overgrazing is not a black or white type of condition; it can occur in degrees. Appellees did not believe the overgrazing differences between the parties were irreconcilable until October 26, 1979, when appellees notified appellant that the lease was to be terminated due to the replacing of cattle on the land. Prior to that time, appellees had attempted to persuade appellant to remedy the condition without resorting to legal action. In June and August of 1979, appellant received written notice from appellees as to their displeasure with appellant's overgrazing practices; both of these letters informed appellant that he was expected to immediately alleviate the problem. It was immediately after appellant began allowing livestock to again graze upon the land in late October of 1979 that appellees commenced this action. Estoppel or waiver, we hold, does not exist under these facts.

---

1. This is evidenced by the aforementioned letters received by appellant during the summer of 1979.

### III.

■ Lastly, appellant contends that South Dakota's forcible entry and detainer (FED) statute violates his constitutional right to due process. SDCL 21–16–1(7), appellant argues, is unconstitutionally vague in that it contains no requirement of an unlawful *forceful* holding of the land. This statute, remedial in nature, was created by the legislature to aid landowners and those rightfully entitled to the possession of land to summarily recover their land. There is no explicit reference to "force" in SDCL 21–16–1(7). This Court's role is to interpret law and not amend it by substituting requirements that do not exist.

■ All presumptions are in favor of the constitutionality of a statute and continue so until the contrary is shown beyond a reasonable doubt. *Crowley v. State*, 268 N.W.2d 616 (S.D.1978). If, within the bounds of reason and legitimate construction, an act of the legislature can be construed as to not violate the constitution, such construction should be adopted. *Frawley Ranches, Inc. v. Lasher*, 270 N.W.2d 366 (S.D.1978). Here, the statute is explicit in that it expresses that a lessee who does perform, or fails to perform, any act which under the lease terminates the lease, is subject to an action of forcible entry and detainer, or detainer only. Hence, SDCL 21–16–1(7) is not unconstitutionally vague.

■ Appellant also contends that SDCL 21–16–7 violates his constitutional right to due process because of its four-day limitation for responsive pleading.[2] This issue was addressed in *Lindsey v. Normet*, 405 U.S. 56, 31 L.Ed.2d 36, 92 S.Ct. 862 (1972). The majority in *Lindsey* held that a FED statutory provision similar to SDCL 21–16–7 (Or.Rev.Stat. §§ 105.135, 105.140) satisfied the requirements of due process. The Court's rationale was predicated on two ba-

sic points: (1) the purpose of a FED statute is to provide a landlord with a quick mode of judicial relief so as to avoid any loss of rent monies; and (2) the statute itself does not, in fact, unduly prejudice a tenant as he has as much access to the relevant facts as a landlord. Furthermore, as the Court in *Lindsey* noted, if the tenant posts a surety bond, a continuance will be granted under Oregon's FED laws. SDCL 21–16–7 also has this surety-continuance provision. Consequently, we hold that SDCL 21–16–7 is not unconstitutional.

We have reviewed appellant's remaining contentions and find them to be without merit.

Affirmed.

All the Justices concur.

---

2. SDCL 21–16–7 reads:

The time for appearance and pleading shall be four days from the time of service on the defendant, and no adjournment or continuance shall be made for more than five days, unless the defendant applying therefor shall give an undertaking to the plaintiff with good and sufficient surety to be approved by the court, conditioned for the payment of the rent that may accrue, together with costs if judgment be rendered against the defendant.