**Harry Peter BUYSSE, et al., judgment creditors, Respondents,**

v.

**BAUMANN–FURRIE & COMPANY, Judgment Debtor,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, judgment garnishee, Appellant.**

No. C4–88–228.

Court of Appeals of Minnesota.

Aug. 16, 1988.

Review Granted Oct. 19, 1988.

Robert M. Halvorson, Gislason, Dosland, Hunter & Malecki, New Ulm, John C. Hottinger, Andrew A. Willaert, Hottinger Law Offices, Mankato, for judgment creditors, respondents.

Lynn Truesdell, Bassford, Heckt, Lockhart & Mullin, P.A., Samuel Hanson, Briggs and Morgan, Minneapolis, for judgment debtor.

Kay Nord Hunt, Phillip A. Cole, Raul A. Gasteazoro, Jr., Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for judgment garnishee, appellant.

Heard, considered and decided by FORSBERG, P.J., and LANSING and SCHULTZ,* JJ.

## OPINION

FORSBERG, Judge.

St. Paul Fire and Marine Insurance Company appeals from a $1,000,000 judgment entered against it after an accounting malpractice action and subsequent garnishment. St. Paul Fire challenges the reasonableness of the *Miller–Shugart* settlement, the characterization of the accounting errors, and the propriety of the garnishment. The trial court found appellant a proper garnishee, bound by the terms of the *Miller–Shugart* stipulated settlement, and established $1,000,000 as the applicable insurance limit. We affirm.

## FACTS

Baumann–Furrie & Company provided Ghent Grain & Feed, Inc. with accounting services from the mid–1970's until 1983, when a series of accounting errors was discovered. Correction of the errors showed Ghent Grain insolvent.

Upon discovering Ghent Grain was insolvent, respondent judgment creditors initiated an accounting malpractice action against Baumann–Furrie. Baumann–Furrie tendered its defense to appellant St. Paul Fire & Marine Insurance Company (St. Paul Fire), who insured Baumann–Furrie under a Business Errors and Omissions Protection Policy.

Prior to presentation of Baumann–Furrie's defense case in the accounting malpractice action, the judgment creditors and Baumann–Furrie entered into a stipulated settlement agreement under the auspices of *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982).[1] The settlement agreement

---

\* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. In a *Miller–Shugart* settlement a plaintiff settles with the tortfeasor but agrees that the judgment will be collected from the proceeds of any applicable insurance policies. In *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982), the Minneso-

ta Supreme Court upheld such an agreement, stating that it is not a breach of an insured's "duty to cooperate" to enter into this type of agreement. *Shugart* concerned a declaratory judgment action in which an insurer was seeking to deny coverage. The court stated that, although the insureds had a duty to cooperate,

established Baumann–Furrie's negligence and relieved Baumann–Furrie from further personal exposure by stipulating that damages could only be collected from insurance proceeds. The settlement established that damages were in excess of $1,000,000. St. Paul Fire was not a party to the agreement.

Subsequent to the entry of judgment on the *Miller–Shugart* agreement, the judgment creditors brought a garnishment action against St. Paul Companies.[2] St. Paul Companies denied liability and the judgment creditors served St. Paul Companies with a supplemental summons and complaint.

St. Paul Companies moved for summary judgment dismissing the garnishment action, alleging that it was an improper party to the garnishment and that final judgment, a prerequisite to garnishment, was not entered. The judgment creditors moved concurrently to substitute St. Paul Fire for St. Paul Companies as a party to the garnishment action and for summary judgment determining the *Miller–Shugart* agreement reasonable and binding on St. Paul Fire. At the same time, St. Paul Fire filed notice to disqualify the Gislason law firm (judgment creditors' counsel), and moved to compel independent discovery.

The trial court granted the motion to substitute parties and directed the judgment creditors to file an amended supplemental summons and complaint relating back to the original pleadings. In the same order, the trial court granted partial summary judgment in favor of the judgment creditors, finding the *Miller–Shugart* agreement reasonable. On August 26, 1987, partial summary judgment was ordered for the sum of $500,000 plus inter-

est.[3] St. Paul Fire's motions to disqualify the Gislason law firm and to compel discovery were denied.

St. Paul Fire next filed a demand for change of venue and notice to remove the trial court judge. Both motions were denied. St. Paul Fire sought a writ of prohibition from this court, removing the trial court judge. The writ was denied.

After issuance of the amended supplemental summons and complaint to St. Paul Fire, the trial court granted St. Paul Fire leave to file a tendered answer. However, the trial court struck various affirmative defenses from St. Paul Fire's answer. St. Paul Fire moved to have the defenses reinstated, but the motion was denied.

The judgment creditors brought a second summary judgment motion requesting the court to find that St. Paul Fire was obligated to pay $1,000,000 per policy limits. At the same time, St. Paul Fire moved for summary judgment, limiting coverage to $500,000. The trial court granted summary judgment in favor of the judgment creditors. The trial court found multiple unrelated accounting errors, thereby triggering the $1,000,000 policy limit.

On January 8, 1988, a second judgment was entered against St. Paul Fire for $500,000. Just prior to entering this second judgment for $500,000, the trial court vacated the order and partial summary judgment dated August 26, 1987.

On January 8, 1988, the trial court entered a second judgment. This judgment incorporated all prior judgments and reinstated the partial summary judgment for $500,000. By incorporating the summary judgment for $500,000 and reinstating the vacated partial summary judgment for $500,000, the judgment obligated St. Paul

the insureds also had the right to protect themselves given the possibility of high personal liability.

**2.** Garnishment proceedings began against St. Paul Companies; however, St. Paul Fire & Marine Insurance Company actually issued the insurance policy. St. Paul Fire & Marine is a subsidiary of St. Paul Companies.

**3.** The errors and omission policy provided policy limits of $500,000 for losses caused by single

or related errors and $1,000,000 in coverage for losses caused by a series of unrelated errors. Since St. Paul Fire did not dispute the existence of coverage, the trial court correctly ruled that St. Paul Fire was obligated to pay the minimum $500,000 limits. However, the trial court recognized that a dispute existed over whether the errors were related or unrelated, therefore making summary judgment for $1,000,000 inappropriate.

Fire to pay $1,000,000 plus interest to the judgment creditors. It is from this judgment for $1,000,000 that St. Paul Fire appeals.

## ISSUES

1. Is judgment entered pursuant to a stipulated settlement a final judgment which may trigger garnishment?

2. Did the trial court abuse its discretion in allowing respondents to substitute parties and to relate the amended supplemental summons and complaint back to the original pleadings?

3. Did the trial court abuse its discretion in denying appellant's motion for change of venue as untimely?

4. Did the trial court abuse its discretion in denying appellant's motion for removal of the trial judge as untimely and because no prejudice was shown?

5. Did the trial court abuse its discretion in denying appellant's motion for independent discovery?

6. Did the trial court abuse its discretion in striking affirmative defenses from appellant's tendered answer?

7. Did the trial court abuse its discretion in not disqualifying the Gislason law firm?

8. Did the trial court err in finding the *Miller–Shugart* agreement reasonable as a matter of law?

9. Did the trial court err in finding the multiple accounting errors unrelated as a matter of law?

10. Is the partial summary judgment entered on August 26, 1987, vacated on January 6, 1988, and reentered on January 8, 1988, properly on appeal?

## ANALYSIS

### 1. *Dismissal of Garnishment Action.*

The garnishment action arose after judgment was entered pursuant to the *Mil-ler–Shugart* stipulated settlement. Appellant St. Paul Fire contends that although the stipulated judgment established Baumann–Furrie's liability, it did not liquidate the claims of the individual judgment creditors and therefore did not constitute final judgment.[4] We disagree.

This issue was addressed by the Minnesota Supreme Court in *Miller v. Shugart*, 316 N.W.2d 729 (1982). In *Shugart*, the insurer similarly challenged the efficacy of initiating garnishment proceedings pursuant to entry of a stipulated judgment in the underlying tort action.

The *Shugart* court found the stipulated judgment sufficient to trigger garnishment and explained:

> What [the insurer] is really saying is that the judgment does not liquidate the claim because it obligates the defendants to pay nothing. While it is true that defendants need not pay anything, it is also true that the judgment effectively liquidates defendants' personal liability.

*Id.* at 732.

> [A]s between plaintiff and the defendants the tort claim has been liquidated and reduced to a judgment. So long as this has occurred, the basis for garnishment exists.

*Id.*

The liability of Baumann–Furrie was liquidated when judgment was entered on the *Miller–Shugart* settlement. Accordingly, the stipulated judgment constituted final judgment and was sufficient to trigger garnishment.

### 2. *Amended Supplemental Summons and Complaint.*

The trial court granted respondents' motion to substitute appellant St. Paul Fire as the proper garnishee, allowing respondents to amend their supplemental summons and complaint[5] pursuant to Minn.R.Civ.P. 15.-

---

4. Minn.Stat. § 571.42, subd. 1 (1986) states:
Service of the garnishee summons upon garnishee shall attach and bind, to respond to final judgment in the [underlying] action * * *.

5. In a garnishment action, the judgment creditors first serve a garnishee summons and complaint. Upon receipt of these pleadings, the garnishee serves a disclosure of indebtedness. If the garnishee denies indebtedness to the judgment debtor, the judgment creditor has leave to

01. Further, the trial court permitted the amended supplemental summons and complaint to relate back to the original pleadings according to Minn.R.Civ.P. 15.03.

[A] party may amend his pleadings only by leave of court * * *; and leave shall be freely given when justice so requires.

Minn.R.Civ.P. 15.01.

Decisions permitting a party to amend its pleadings are not reversed absent a clear abuse of discretion. *Warrick v. Giron,* 290 N.W.2d 166, 169 (Minn.1980). When a plaintiff seeks to add a new defendant, factors to be considered include prejudice to adverse party, prejudice to moving party if leave is denied, the relationship between new and old defendants, and whether the proposed defendant had notice of the suit. *Wilson v. City of Eagan,* 297 N.W.2d 146, 151 (Minn.1980); Minn.R.Civ.P. 15.03.

The trial court permitted the substitution of parties to correct an obvious mistake. The trial court recognized that garnishment against St. Paul Companies would be futile because the company was not indebted to respondents, nor was it a party to the underlying action. The judgment preceding the garnishment was entered against appellant St. Paul Fire, not St. Paul Companies. All parties acknowledge that St. Paul Fire was the proper garnishee.

The record shows St. Paul Fire remained active and informed throughout all proceedings, including the garnishment against St. Paul Companies. There is no indication that it lacked notice of the garnishment. In fact, St. Paul Fire and St. Paul Companies shared counsel throughout the proceeding. Although appellant alleges that the substitution was prejudicial, it raises no examples of prejudice. The trial court determined that the substitution of parties and issuance of an amended supplemental summons and complaint effectively and efficiently met the needs of the parties without undue prejudice. We agree.

St. Paul Fire asserts that garnishment is a statutory proceeding and therefore not governed by Minnesota Rules of Civil Procedure. For this reason, appellant argues that Rules 15.01 and 15.03 are inapplicable to this action. However,

the rules are directly applicable in all civil actions in Minnesota District Courts * * *. [T]he exceptions [of Rule 81] only vary the procedures followed when the statutory procedure is "inconsistent" with the Rules, the Rules govern to some extent in virtually every civil matter.

1 D. Herr & R. Haydock, *Minnesota Practice* § 1.1 (1985); Minn.R.Civ.P. 81. Rules 15.01 and 15.03 are designed to correct errors in pleadings and to alleviate undue prejudice to either party. Although St. Paul Fire alleges inconsistencies which raise prejudice, it gives no examples.[6]

The amended pleading arose out of the same transaction and occurrence as did the original pleading, therefore, the amendment related back to the date of the original pleading and St. Paul Fire became a party to the original garnishment.

An amendment changing the party against whom a claim is asserted relates back if the foregoing provision [same transaction or occurrence] is satisfied and * * * the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Minn.R.Civ.P. 15.03. As previously discussed, St. Paul Fire was a party to the underlying tort action which resulted in

---

file a *supplemental* summons and complaint establishing the basis for indebtedness. Minn. Stat. §§ 571.41, .42, .471, subd. 2, .495, .50 & .51 (1986).

**6.** Minnesota courts have found other rules of procedure harmonious with the spirit of garnishment. *See, e.g., Roinestad v. McCarthy,* 249 Minn. 396, 82 N.W.2d 697 (1957) (Minn.R.Civ.P. 60.02); *Brown v. Bertrand,* 254 Minn. 175, 94 N.W.2d 543 (1959) (Minn.R.Civ.P. 60.02); *Altman v. Levine & Tanz, Inc.,* 256 Minn. 48, 97 N.W.2d 460 (1959) (Minn.R.Civ.P. 4.04(2)(b) and 60.02).

judgment against it. Appellant acknowledges that a mistake was made in naming St. Paul Companies as garnishee. St. Paul Fire raises no specific reasons why it was prejudiced by application of the relation back rule. The record shows that St. Paul Fire received continuous and consistent notice of all proceedings and, as such, should have reasonably anticipated the garnishment.

Next, St. Paul Fire argues that the garnishment initiated against it is a new action. The rule pertaining to relation back of amendment does not apply where purpose of pleading is to begin a new cause of action. *Wyman v. Wyman,* 297 Minn. 465, 469–70, 212 N.W.2d 368, 371 (1973). However, garnishment is a proceeding in the main action; it is not an independent action, but "merely an ancillary proceeding" to secure any judgment recovered in the main action. *Gilloley v. Sampson,* 203 Minn. 233, 234, 281 N.W. 3, 4 (1938); Minn. Stat. § 571.63 (1986).

The trial court has broad discretion to make procedural decisions. Appellant has not shown that it was unduly prejudiced by the trial court's order for party substitution or the relation back of the amended supplemental summons and complaint. Given the absence of any showing that the trial court abused its discretion, we affirm.

### 3. *Venue.*

A request for change of venue must be filed within "20 days after the summons is served." Minn.Stat. § 542.10 (1986 & Supp.1987). St. Paul Fire became a "related back" party to the garnishment through application of Minn.R.Civ.P. 15.01 and 15.03. This means that St. Paul Fire effectively became a party at the onset of the garnishment. The garnishee summons was served on April 27, 1987, but appellant did not move for change of venue until August 28, 1987, more than four months after the initial garnishee summons was served.

Furthermore, garnishment is an extension of the underlying action. *Gilloley,* 203 Minn. at 334, 281 N.W. at 4. Although St. Paul Fire was a party to the main action, it did not question venue until the garnishment. For these reasons, we agree with the trial court that appellant's request for change of venue was untimely.

### 4. *Removal of District Court Judge.*

Removal will be granted if timely filed and prejudice is shown.

No such notice may be filed * * * against a judge who has presided at a motion or any other proceeding of which the party had notice.

Minn.R.Civ.P. 63.03. Where affidavit of prejudice is untimely, the court's refusal to honor the affidavit is not in error. *See, e.g., State v. Hoskins,* 292 Minn. 111, 120–21, 193 N.W.2d 802, 810 (1972).

St. Paul Fire's notice to remove was filed after completion of the tort action, after service of the garnishee summons, and after service of the supplemental summons and complaint. The trial judge presided at all respective hearings, beginning with the tort action and continuing to the substitution of parties. St. Paul Fire was either present or notified of all hearings. We agree with the trial court that St. Paul Fire's motion to remove was untimely.

### 5. *Independent Discovery.*

The trial court denied appellant's motion to conduct independent discovery after being substituted as a party to the garnishment. The Minnesota Rules of Civil Procedure encourage broad discovery practices. However, discovery is not without limits, nor is it to be used as a tool for delay.

The trial court may limit discovery on its own initiative if:

(a) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is either more convenient, less burdensome, or less expensive;

(b) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

(c) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources and the importance of the issues at stake in the litigation.

Minn.R.Civ.P. 26.02.

██ St. Paul Fire requested permission to conduct discovery relating to Baumann–Furrie's liability and the alleged damages incurred by judgment creditors. The record shows that St. Paul Fire conducted substantial discovery prior to commencement of the trial. Further, Baumann–Furrie's liability is not in dispute. The reams of financial records already discovered clearly show that damages would meet or exceed the policy limits. The trial court determined that further discovery would be burdensome, expensive and duplicative. In addition, the trial court found that St. Paul Fire had ample time to complete discovery prior to trial and found no compelling reason to allow further discovery of financial data. We affirm the decision of the trial court to deny St. Paul Fire's motion for independent discovery.

### 6. *Striking Affirmative Defense.*

██ The trial court permitted St. Paul Fire to submit a tendered answer in response to the amended supplemental summons and complaint. Upon filing of the answer, the trial court struck certain affirmative defenses. St. Paul Fire contends this constitutes clear error. We disagree and find the decision to strike the specific defenses was within the discretion of the trial court.

Again, the amended pleadings related back to the onset of garnishment. An answer to the garnishee summons and initial

---

**7.** Affirmative defenses included: dismissal due to improper party, lack of final judgment, lack of jurisdiction, unreasonableness of *Miller–Shugart* agreement, and improper service.

**8.** Minnesota Rules of Professional Conduct rule 1.7 states:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

---

supplemental summons and complaint had already been given. St. Paul Fire had no absolute right to tender an additional answer, but it was in the discretion of the trial court to allow St. Paul Fire to tender an additional answer. Minn.R.Civ.P. 15.04.

In addition, the affirmative defenses raised by St. Paul Fire had been addressed in previous motions and included the same issues raised on appeal.[7] In addition, the first ten paragraphs of the original answer submitted by St. Paul Companies were identical to the tendered answer of St. Paul Fire and signed by the same attorney. We see no abuse of discretion but merely an act intended to eliminate redundancy.

### 7. *Disqualification of Counsel.*

St. Paul Fire moved to disqualify the Gislason law firm (judgment creditors' counsel) due to a conflict of interest.[8] St. Paul Fire argues that the Gislason law firm's knowledge of the inner workings of appellant's company adversely affect this action.[9] The trial court denied the motion.

██ Resolving questions of conflict of interest is primarily the responsibility of the lawyers undertaking representation. Minnesota Rules of Professional Conduct, rule 1.7 and comment (1985). Opposing counsel may raise the issue if justice requires; however, such an objection must be viewed with caution to avoid misuse or harassment. *Id.* The trial court has discretion to disqualify a law firm if conflict is shown. Factors to consider in analyzing disqualification notice include (1) potential for adverse effect, (2) intimacy of attorney's relationship with the client involved, and (3) the likelihood of actual conflict and prejudice. The question is one of proximity and degree. *Id.*

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

**9.** The record shows that the Gislason law firm had represented appellant in prior actions, and continued to counsel appellant in pending insurance actions. Appellant further states that the Gislason law firm frequently consults St. Paul Fire on policies such as the Errors and Omission Policy in dispute.

■ In order to alleviate the conflict of interest and appearance of impropriety, the Gislason law firm made two concessions. First, it retained Hottinger Law Offices to represent the judgment creditors in all insurance issues. Second, it agreed to withdraw if summary judgment was granted on the reasonableness of *Miller–Shugart.* In view of the fact that Hottinger, not the Gislason law firm, represented the judgment creditors on the insurance issues, we agree with the trial court that no conflict exists.

### 8. *Reasonableness of Miller–Shugart Agreement.*

■ The trial court found the *Miller–Shugart* settlement reasonable and binding as a matter of law. Concurrent with its finding, it entered partial summary judgment against appellant for $500,000 plus interest, costs and disbursements.[10] Appellant states the question of reasonableness is a question of fact and that the trial court misapplied *Shugart.* We disagree.

> [T]he determination of the question of reasonableness is a question of law for the court. * * * The court will take into account the *bona fides* of the settlement in making this determination, including the circumstances of the case and settlement.

*Osgood v. Medical, Inc.,* 415 N.W.2d 896, 903 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Feb. 12, 1988) (citing *Shugart,* 316 N.W.2d at 736).

> [T]he question is not whether the party seeking indemnification *would have* been liable for at least the amount of the settlement; the question is whether the party *could have* been liable under the facts shown at trial.

*Osgood,* 415 N.W.2d at 903. In a case where settlement was entered into during trial, the burden of proof is on the party seeking to avoid indemnification to show that the settlement was unreasonable. *Id.* (citing *Butler Brothers v. American Fidel-*

*ity Co.,* 120 Minn. 157, 139 N.W. 355 (1913)).

Since the settlement was entered into four weeks into trial, the burden of proof is on appellant to show that the settlement was unreasonable. The damages as to each plaintiff were set out in a schedule attached to the settlement agreement. Further, during the partial trial the parties agreed that any judgment would be paid to the bankruptcy trustee and the bankruptcy court would determine individual allocation. St.Paul Fire also agreed that damages would be treated as a lump sum and would not be submitted to the jury.

St. Paul Fire admitted coverage for accounting malpractice and the settlement established Baumann–Furrie's liability. The minimum amount of coverage allowed by the insurance policy for accounting malpractice was $500,000. This is the amount respondents *could have* received. *See Osgood,* 415 N.W.2d at 903. Accordingly, the trial court appropriately entered partial summary judgment for $500,000.

■ The trial court did recognize the possible joint liability of Ghent Grain. However, joint liability does not necessarily affect the reasonableness of the settlement. Reasonableness is measured from the viewpoint of the defendant. *Shugart,* 316 N.W.2d at 735–36. In this case, it was reasonable for Baumann–Furrie to enter into the settlement in order to protect itself from personal liability for damages well in excess of $500,000.

### 9. *Policy Limits.*

■ The coverage summary of the Errors and Omission Policy states that $500,000 is the maximum coverage available for a "single error or series of related errors." One million dollars is the maximum coverage for multiple unrelated errors. The trial court found there to be multiple and unrelated accounting errors and granted

---

**10.** "When the judgment is for the recovery of money * * * interest from the time of the verdict or report until judgment is finally entered shall be computed * * * and added to the judg-

ment." Minn.Stat. § 549.09, subd. 1(a) (1986). Judgment on the stipulated settlement was entered on February 6, 1987. Therefore, interest properly accrued from that date.

**428**

summary judgment in favor of judgment creditors in the amount of $500,000.[11]

Summary judgment is proper if no genuine issues of material fact exist and judgment may be entered as a matter of law. Minn.R.Civ.P. 56.03. On review, this court may determine:

> (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of law.

*Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). Both parties recognize that errors originated from false financial statements and neither party disputes the compounded errors that followed. However, St. Paul Fire contends the errors were single or "related to each other as well as the final result." *Arizona Property & Casualty Insurance Guaranty Fund v. Helme,* 153 Ariz. 129, 136, 735 P.2d 451, 458 (1987). For this reason, St. Paul Fire asks us to view the errors as a chain of related events stemming from a single false report.

We agree that all errors, no matter how characterized, led to insolvency. However, the judgment creditors each suffered unique losses because of their individual relationships with Ghent Grain.[12] The trial court viewed volumes of documents and financial statements and heard hours of argument. It was in a good position to assess the nature and uniqueness of the errors. It found numerous unrelated accounting errors and we do not find any evidence to invalidate this assessment of the situation.

10. *Reviewability.*

▇▇▇▇ Respondents question the reviewability of the insurance coverage issues. Minn.R.Civ.App.P. 103.01 sets forth the manner of making an appeal. Appeal must be from final judgment and the appellant must file a notice of appeal stating from which judgment the appeal is taken. Minn. R.Civ.App.P. 103.01, subd. 1(c).

Two judgments were entered on January 8, 1988. The first judgment for $500,000 was entered pursuant to the summary judgment motion regarding insurance coverage. The second judgment was entered pursuant to the initial partial summary judgment for $500,000. It is from the second judgment that St. Paul Fire appeals.[13]

The trial court had vacated the initial partial summary judgment but reinstated it in the second judgment on January 8, 1988. This was necessary to bring the final damage award in line with the finding of $1,000,000 in coverage.

The second judgment (judgment on appeal) incorporates all prior judgments and reinstates the partial summary judgment.

> The Court, having been fully advised and upon all the files and records herein, and oral arguments and briefs of counsel filed December 3, 1987, filed its Order and later filed an Order vacating the Partial Summary Judgment dated August 26, 1987, and pursuant to the Order filed December 28, 1987, *wherein the Court ordered let all judgments granted heretofore be entered forthwith.*
>
> IT IS HEREBY ADJUDGED AND DECREED THAT J/C's *motion for partial summary judgment* be and is hereby granted and they shall have judgment against the Judgment Garnishee, St. Paul Fire and Marine Insurance Company, in the sum of $500,000 with their costs and disbursements.

Judgment dated January 8, 1988 (emphasis added).

Appellant appealed from the final judgment entered January 8, 1988. Since this judgment incorporated all prior judgments, including the summary judgment disposi-

---

**11.** This is the second summary judgment for $500,000. The first partial summary judgment was also for $500,000. The two were incorporated to warrant final judgment of $1,000,000 plus costs and interest.

**12.** Judgment creditors include farmers, warehousemen, suppliers, government agencies, and the bankruptcy trustee.

**13.** The trial court entered partial summary judgment for $500,000 on August 20, 1987. It vacated its order and partial summary judgment on January 6, 1988.

tion of the coverage issues, the insurance coverage issues are reviewable.

## DECISION

The judgment entered pursuant to the *Miller–Shugart* stipulated settlement liquidated Baumann–Furrie's liability and, in doing so, constituted a final judgment which could trigger garnishment. Although St. Paul Fire challenges the garnishment and resulting procedural decisions, it has not shown any prejudice resulting from the trial court's rulings. The record shows St. Paul Fire had consistent and complete notice of all proceedings, beginning with the tort action and culminating with this appeal. Further, the record and judicial efficiency support the procedural decisions of the trial court and no indication is given that the trial court abused its discretion.

We find that the trial court's determination that the multiple accounting errors were unrelated was based on a careful assessment of the applicable financial records. Believing that the trial court was in a better position to determine the coverage issue, we find no reason to reverse its finding.

AFFIRMED.