Dean LEWIS and Dorothy Lewis,
d/b/a LEWIS, INC., Plaintiffs
and Appellants,

v.

Gerald MOORHEAD and Mary
Ann Moorhead, Defendants
and Appellees.

No. 18507.

Supreme Court of South Dakota.

Considered on Briefs April 26, 1994.

Decided Sept. 14, 1994.

Paul E. Jensen of Jensen and Massa, Winner, for plaintiffs and appellants.

J.M. Grossenburg of Grossenburg Law Office, Winner, for defendants and appellees.

CALDWELL, Circuit Judge.

Dean and Dorothy Lewis appeal from the judgment of the trial court which awarded property, to which the Lewises had legal title, to Gerald and Mary Ann Moorhead under a theory of adverse possession. We affirm.

This dispute arises over the ownership of a triangular wedge of property dividing lots owned by Dean and Dorothy Lewis (Lewises) and Gerald and Mary Ann Moorhead (Moorheads) in Winner, South Dakota. In 1971, Cecil Dreyer (Dreyer) was the sole owner of all of the property in question. In October of that year, Dreyer entered into an oral agreement with the Moorheads that he would deed over the lot on which they resided in exchange for Gerald's services. To the east of the lot stood a white wooden fence, which bordered a portion of the property approximately the length of Moorheads' residence. The parties agreed that the fence line formed the eastern border of the lot.

In 1981, Dreyer quitclaimed the property, consisting of all of Lot E and the West 20' of Lot A of Dreyer's subdivision. In September of 1982, Dreyer sold the remainder of Lot A to Ray I. Risseeuw who subsequently sold it to the Lewises in April of 1987. In 1990, Lewises had the property surveyed and discovered that the white fence was not the lot line, but enclosed a wedge of property to which Lewises had legal title. The actual property line ran approximately 10 feet east of Moorheads' residence and bisected a rental trailer which they had moved onto the lot sometime prior to 1974. In 1991, Lewises erected a fence across the disputed area which was torn down by the Moorheads and subsequently replaced.

On October 1, 1991, Lewises instituted a small claims action seeking compensatory and punitive damages for Moorheads tearing down Lewises' fence. Moorheads removed the small claims action to circuit court pursuant to SDCL 15–39–57. Lewises moved to amend the complaint on October 30, 1991 adding a request for a boundary determination. Lewises' motion to amend was granted on November 7, 1991 and was filed on November 8. The trial court found for Moorheads on their counterclaim of ownership by adverse possession because Lewises failed to bring their boundary determination action within the required twenty year period.

On appeal, Lewises contend that permissive occupation of land under an oral contract for deed is not "exclusive of any other right" such that it may ripen into adverse possession because there was unity of title in Dreyer from 1971 until 1981. In addition, they

assert that the doctrine of boundary by acquiescence does not alter this conclusion. Finally, Lewises contend that their amended complaint relates back to the filing of the small claims trespass action, bringing the suit within the twenty year limit.[1] We affirm the circuit court.

## ISSUE I: ADVERSE POSSESSION

■ In South Dakota, property is subject to adverse possession when it has been actually and continually occupied under a claim of title exclusive of any other right. SDCL 15–3–12.[2] The original claim of title need not be founded on a written instrument, but the land in question must either have been protected by a "substantial inclosure" or must have been "usually cultivated or improved." SDCL 15–3–13.[3] The traditional elements of adverse possession require the "actual, open, visible, notorious, continuous and hostile" occupation of the property for the statutory period. *Estate of Billings v. Jehovah Witnesses*, 506 N.W.2d 138, 141 (S.D.1993); *Lien v. Beard*, 478 N.W.2d 578, 579 (S.D.1991) (citing *Forest Home Cemetery v. Dardanella Fin. Corp.*, 329 N.W.2d 885, 888 (S.D.1983). In South Dakota, the statutory period of possession is twenty years. SDCL 15–3–1.

■ Proof of the individual elements of adverse possession present questions of fact for the trial court, while the ultimate conclusion of whether they are sufficient to constitute adverse possession is a question of law. *Lien*, 478 N.W.2d at 580. Proof of adverse possession must be supported by "clear and convincing" evidence. *Id.* at 579. The trial court's findings of fact are presumed correct and we defer to those findings unless the evidence clearly preponderates against them. *Cuka v. Jamesville Hutterian Mut. Soc.*, 294 N.W.2d 419, 421 (S.D.1980). Those findings will not be overturned unless clearly erroneous. *Lien*, 478 N.W.2d at 580. However, no deference is given to the trial court's conclusions of law which are freely reviewable by this court. *Rusch v. Kauker*, 479 N.W.2d 496, 499 (S.D.1991).

■ In this case, the trial court was able to see the witnesses and view the premises in question. It determined that clear and convincing evidence supported the facts that Moorheads' occupation of the disputed tract had been actual, open and continuous from October 1971 until October 1991. It further found that the boundary was protected by a substantial enclosure and that the Moorheads had cultivated and improved the property.[4]

1. SDCL 15–6–15(c) provides, in pertinent part: Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading....
The trial court determined that the earlier trespass suit was not an action to recover the disputed property and that the small claims court lacked jurisdiction to entertain the substance of the amended complaint. Thus, it found that Lewises' claim to recover their real property missed the twenty year limitation by a few days.

2. SDCL 15–3–12 provides:
Where it shall appear that there has been an actual continued occupation of premises under a claim of title exclusive of any other right, but not founded upon a written instrument, or a judgment, or decree, the premises so actually occupied, and no other, shall be deemed to have been held adversely.

3. SDCL 15–3–13 provides:
For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, or judgment, or decree, land shall be deemed to have

been possessed and occupied in the following cases only:
(1) Where it has been protected by a substantial inclosure; or
(2) Where it has been usually cultivated or improved.

4. Although either of these elements will support a claim of adverse possession, we find that both are supported by the evidence. The disputed wedge comprised Moorheads' front yard and was encroached upon by their rental trailer. Even though the white fence did not run the entire distance between the lots, it did provide a physical and visual basis for determining the property line. *See Klinefelter v. Dutch*, 161 Wis.2d 28, 467 N.W.2d 192, 194–95 (App.1991) ("An inclosure having no purpose of physical exclusion of outside interferences—a mere furrow turned with a plow around the land, or a line marked by cutting away the bush, or a fence opened so as to admit outside disturbers may be sufficient under the circumstances to indicate, as a matter of fact, the boundaries of an adverse claim ..." (citations omitted)); *Cuka*, 294 N.W.2d at 422 (a natural barrier, such as a river, can fulfill the substantial enclosure element of the statute).

In addition, the court determined that the Moorheads' possession had been under a claim of title exclusive of any other right and that the lot line had been acquiesced in by the Lewises and their predecessors in interest. Lewises do not dispute that the Moorheads have been in possession of the property since 1971, but assert that their occupancy has not been exclusive of any other claim.

Lewises contend that Moorheads did not have a claim of title exclusive of any other right based upon the following: (1) their original contract for deed was oral, and therefore invalid under the statute of frauds; and (2) possession under a contract for deed is permissive and not adverse in the fact that Dreyer maintained a unity of title in both lots until the 1981 quitclaim deed.

The first contention presumes a claim of adverse possession based on a defective written instrument, or "color of title." See SDCL 15–3–10, 15–3–11.[5] However, the trial court found that Moorheads' claim was based on actual occupancy and not upon a written claim of right, and thus the requirements of SDCL 15–3–12 and 15–3–13 apply. These sections do not require any written instrument or "color of title" in order to claim adverse possession. All that is required is that the portion of the land which is claimed has been actually and continuously occupied by the adverse party. Lien, 478 N.W.2d at 579.

Even when a property claim is based upon "color of title," the doctrine of adverse possession presupposes a defective title. Creel v. Hammans, 234 Iowa 532, 13 N.W.2d 305, 307 (1944); Sioux City Boat Club v. Mulhall, 79 S.D. 668, 117 N.W.2d 92, 96 (1962). "Where the possession of real estate is actual, it may commence in parol without deed or writing. . . ." Walker v. Sorenson, 64 S.D. 143, 265 N.W. 589, 592 (1936). Therefore, the question is not whether Moorheads could have sought specific performance of their oral contract, but rather, what was the nature of their claim of title under the circumstances.

The exclusive test of adverse possession is the physical exclusion of others under a claim of right. Labore v. Forbes, 59 S.D. 12, 238 N.W. 124, 125 (1931). Under South Dakota law, once a contract for deed is entered, the vendor holds legal title in trust for the purchaser under an obligation to convey upon payment of the purchase price. Tarpinian v. Wheaton, 79 S.D. 473, 113 N.W.2d 472, 475 (1962). In addition SDCL 43–26–1 provides that an agreement to sell real property binds the seller to execute a conveyance in a form sufficient to pass title to the property. The vendee under a contract for deed acquires equitable title and the right to use and possess the property. First Federal Sav. & Loan Ass'n, etc. v. Wick, 322 N.W.2d 860, 862 (S.D.1982). Thus, even under an oral contract for deed, the purchaser

---

5. SDCL 15–3–10 provides:
 Whenever it shall appear that the occupant, or those under whom he claims, entered into the possession of premises under claim of title, exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the premises included in such instrument, decree, or judgment, or of some part of such premises under such claim for twenty years, the premises so included shall be deemed to have been held adversely; except that where the premises so included consist of a tract divided into lots the possession of one lot shall not be deemed a possession of any other lot of the same tract.
 SDCL 15–3–11 provides:
 For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument, or a judgment, or a decree, land shall be deemed to have been possessed and occupied in the following cases:
 (1) Where it has been usually cultivated or improved;
 (2) Where it has been protected by a substantial inclosure;
 (3) Where, although not inclosed, it has been used for the supply of fuel or of fencing timber for the purposes of husbandry, or the ordinary use of the occupant; or
 (4) Where a known farm or a single lot has been partly improved, the portion of such farm or lot that may have been left not cleared or not inclosed according to the usual course and custom of the adjoining country shall be deemed to have been occupied for the same length of time as the part improved and cultivated.

has a claim of equitable title exclusive of other rights.

Moorheads' claim of title to the property was recognized by Dreyer in that he allowed them to enter, take possession, and maintain the premises until 1981 when he conveyed the deed. During that time, Moorheads resided on the land as owners, cultivated and improved it and moved a rental trailer onto the property. In *Barclay v. Tussey*, 259 Ark. 238, 532 S.W.2d 193, 196 (1976) the Supreme Court of Kentucky held that a party who entered onto property claiming a right based upon an oral swap of land could assert a claim for adverse possession even though the agreement was not enforceable because of the statute of frauds. The test is whether the person "honestly enters into possession of land in the belief that the land is his own." *Id.* 532 S.W.2d at 195. Clearly, the Moorheads entered into possession believing the land to be their own.

While there is a split of opinion as to whether a purchaser under a contract for deed can hold adversely to the vendor or his successors in interest,[6] the trial court found that this case also involved acquiescence in a mistaken boundary. Even if we accept the view that adverse possession cannot be asserted under a contract for deed, the extent of permissive use and occupation is determined by the terms of the grant. *Travis v. Madden*, 493 N.W.2d 717, 719 (S.D.1992).[7]

█ We have long recognized that a claim for adverse possession does not require a good faith belief or an intention to claim another's land, but can be founded upon ignorance, inadvertence, or mistake as to the actual boundary between two parcels. *Lien*, 478 N.W.2d at 580; *Taylor v. Tripp*, 330 N.W.2d 542, 545 (S.D.1983); *Labore*, 59 S.D. 12, 238 N.W. at 125–26; *Sullivan v. Groves*, 42 S.D. 60, 70, 172 N.W. 926 (1919); *Lehman v. Smith*, 40 S.D. 556, 562–63, 168 N.W. 857 (1918). This doctrine provides an evidentiary presumption of hostility to the occupation of property to a "visible and ascertainable boundary" for the statutory period. *Lien*, 478 N.W.2d at 580. Thus, when adjoining land owners mistakenly assume that a fence line forms the boundary between their properties, and the legal titleholder acquiesces in his neighbor's occupation of the land, the possession is presumed adverse.

█ Dreyer and Moorheads mistakenly assumed that the white fence delineated the boundary between the granted and retained land. The best evidence of the extent of Dreyer's permission is contained in his grant to the Moorheads in the 1981 quitclaim deed. The deed transferred the "[E]ast 290.6 feet of Lot E and the West 20 feet of Lot A" of Dreyer's subdivision, because a survey had revealed that the lot line passed through Moorheads' residence. Both parties assumed that the additional twenty feet of Lot A would conform the grant to a boundary consistent with the fence line.

█ "It is the intent with which possession is held rather than an intention to hold in accordance with his deed that is controlling[.]" in a claim for adverse possession. *Vrana v. Stuart*, 169 Neb. 430, 99 N.W.2d 770, 772 (1959). Although unintentional and a product of a mutual mistake, Moorheads'

---

6. *See Evans v. Hamling*, 637 S.W.2d 746, 748 (Mo.1982) ("A purchaser in possession under a contract to deliver a deed upon payment of the purchase money cannot claim adversely to his vendor."); *Leo Egan Land Co., Inc. v. Heelan*, 210 Neb. 263, 313 N.W.2d 682, 685–86 (1981) (possession by a purchaser under a verbal contract of sale will not become adverse until payment of the purchase price). *But see, Cook v. Clark*, 375 N.W.2d 181, 184 (N.D.1985) (even though the state was the grantor, the time period for acquiescence begins to run at time contract for deed is entered, if the action to establish acquiescence comes after full payment of purchase price); *Allred v. Reed*, 362 N.W.2d 374, 377 (Minn.App.1985) (the court found no validity in the theory that statute of limitations for ad-

verse possession would not run during executory contract for deed); *Barclay v. Tussey*, 532 S.W.2d at 195 (attempt to form an oral contract for deed will not make possession permissive when land is actually occupied under claim of right); *Nevells v. Carter*, 122 Me. 81, 119 A. 62, 63 (1922) (actual occupation under parol grant is under claim of right and may ripen into adverse possession).

7. *Travis* dealt with a prescriptive easement, which is analogous to adverse possession. In determining the extent of permissive use, this court looks at the intent of the grant, which is best evidenced by the express language of the easement. *See also* SDCL 43–13–5.

occupation of the wedge of land to the fence line went beyond the permission contained in Dreyer's grant. Thus, their occupation is presumed hostile under the doctrine of boundary by acquiescence.

The mistake as to the actual boundary line persisted during the ownership of both Risseeuw and, subsequently, the Lewises. Under the doctrine of tacking of possession, the court must determine whether the claimant out of possession or any of his predecessors in interest have been in possession of the disputed property during the statutory period. *Walker*, 64 S.D. 143, 265 N.W. at 591. Here, Lewises and all of their predecessors in interest mistakenly assumed that Moorheads' property line extended to the white fence. This mistake persisted for twenty years. Thus, the findings of the trial court are not clearly erroneous and the evidence clearly and convincingly supports the legal conclusion that Moorheads have gained title to the disputed strip through adverse possession.

## ISSUE II: RELATION BACK OF AMENDED COMPLAINT

The trial court determined that the date of Lewises' cause of action was November 8, 1991, which was the date of the filing of the notice of entry of order permitting the amended complaint. Thus, Lewises missed the twenty year limitations period by a matter of days. Lewises contend that the trial court's order permitting an amendment to their complaint relates their claim for the recovery of the disputed property back to the date of the filing of their original small claims action. *See* SDCL 15-6-15(c).[8] Thus,

they assert that their action falls within the statute of limitations, precluding any claim for adverse possession.

 The rationale of the relation back of amendments rule is to ameliorate the effect of statutes of limitations. Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1497 (1990). The test under our statute, which follows Fed.Rule Civ.Proc. 15(c), is whether the claim arose out of the conduct, transaction or occurrence set forth in the original claim, or whether the claim states a different cause of action. If an amended claim raises new and distinct theories of recovery, it will not relate back to the original. *Rowen v. Le Mars Mut. Ins. Co. of Iowa*, 282 N.W.2d 639, 646-47 (Ia.1979); *Buysse v. Baumann-Furrie & Co.*, 428 N.W.2d 419 (Minn.App.1988). When facts in an amendment state a different cause of action from the original claim, the statute of limitations runs to the date of the amendment. *League v. Vanice*, 221 Neb. 34, 374 N.W.2d 849, 855 (1985). Here, the matters asserted in Lewises' amended complaint clearly arise out of the same transaction or occurrence as the original small claims complaint. Thus, the relation back doctrine would apply to the amended complaint but for the following exception.[9]

 Where the relation back doctrine will act to extend a court's jurisdiction, its application is impermissible. *USM Corp. v. GKN Fasteners LTD.*, 578 F.2d 21, 23 (1st Cir.1978). Lewises' original claim was brought in small claims court which was without jurisdiction to determine the boundary dispute. The jurisdiction of a small

---

**8.** SDCL 15-6-15(c) provides:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment

(1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and

(2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

**9.** *See Stone v. Brown*, 621 S.W.2d 182, 184 (Tex. App.1981) (an amended complaint adding the correct description of property does not state a different cause of action, therefore, the amendment relates back to toll the running of the adverse possession statute of limitations); *Board of W. & S. Com'rs of the City of Mobile v. McDonald*, 56 Ala.App. 426, 322 So.2d 717, 720-21 (1975) (amendment to add proper party plaintiff relates back to cut short the statute of limitations and the defense of adverse possession).

claims court is provided in SDCL 15–39–45, and does not include the power to make the boundary determination and issue the injunction necessary for Lewises to recover their property.[10] Therefore, there was no relation back here.

Although Moorheads included a request for a jury trial in their answer, which was filed on October 17, 1991, the court did not file its order permitting the amended complaint until November 7, 1991. The circuit court determined that its jurisdiction over Lewises claim arose on that date. "Trial courts are vested with broad discretion in the matter of amending pleadings...." *Jordan v. Duprel*, 303 N.W.2d 796, 798–99 (S.D.1981) (quoting, *Andree v. Andree*, 291 N.W.2d 788, 790 (S.D.1980)). We will not disturb the ruling of the trial court unless there has been an abuse of discretion. *Id.*

An "abuse of discretion" refers to a "discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Dacy v. Gors*, 471 N.W.2d 576, 580 (S.D.1991). We do not determine whether the justices of this Court would have made a like ruling. Rather, the test is "whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion." *Matter of Estate of Donahue*, 464 N.W.2d 393, 395 (S.D.1990) (citing *Davis v. Kressly*, 78 S.D. 637, 107 N.W.2d 5, 8 (1961)). We do not find that the trial court abused its discretion in not allowing the amendment to relate back to the small claims action and thereby cut off the statute of limitations. The decision of the trial court is affirmed.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

HENDERSON, Retired Justice, concurs specially.

CALDWELL, Circuit Judge, for WUEST, J., disqualified.

---

10. SDCL 15–39–45 provides:
The Supreme Court may amend and repeal uniform rules of practice applicable to circuit and magistrate courts in this state, providing for a simple, informal and inexpensive procedure, hereinafter called the procedure, for the determination according to the rules of substantive law, of claims in the nature of contract or tort other than slander and libel, in which

KONENKAMP, J., not having been a member of the Court at the time this case was submitted, did not participate.

HENDERSON, Justice, Retired (specially concurring).

We have, before us, the consideration of a "mistaken boundary line" case. SDCL 15–3–13 is the key statute upon which we must focus.

Essentially, Lewises did not know they technically owned a "sliver" or "wedge" of land until a survey was completed in 1990. Moorheads were unknowledgeable that they had no legal title to said sliver or wedge. The sliver of land was bounded by a prominent white fence which they had always believed marked the eastern boundary of the west twenty feet of Lot A, and thus their property. Peace prevailed with these neighbors until the survey. Spawned by the survey, litigation erupted first in small claims court, and ultimately a legal struggle in the Supreme Court of this state with the Lewises advocating the circuit court erred. On Issue II, I fully concur, but specially concur on Issue I to elaborate on some recent authority in this Court, unmentioned in the majority opinion.

Frank Biegelmeier, our first Chief Justice of the Unified Judicial System, after his retirement, found himself in a situation almost identical to the case at hand. In 1987, he rightfully won his case. *See Johnson v. Biegelmeier*, 409 N.W.2d 379 (S.D.1987). As I believe that case to be strong precedent for our holding in this case, I call it to the reader's attention.

As before us, SDCL 15–3–13 was relied upon in *Biegelmeier* in the rationale of our decision. The facts are extremely parallel to the case now under consideration.

the plaintiff does not claim as debt or damages more than four thousand dollars; and for review of judgments upon such claims when justice so requires.
Exemplary or punitive damages may not be awarded under this chapter, except as provided in chapter 60–11, chapter 22–30A and §§ 43–32–6 and 43–32–24.

- Biegelmeier's fence encroached upon Johnson's property.
- Biegelmeier claimed ownership of the land in question by adverse possession.
- Biegelmeier did not have title to the land in dispute.
- The fence line existed at the time Biegelmeier purchased the property in 1944. (Here, the fence line existed before October, 1971, the date Moorheads took possession.)
- Biegelmeier prevailed, although he had no legal title (Johnsons acquired title to the land in dispute in 1979), because (1) the disputed area (2.43 acres) was enclosed by a fence and (2) he possessed it for more than twenty years. Thus, he established title by adverse possession. The standard of proof, we held, was "clear and convincing." Again, we follow the same quantum of proof in the present case.